# CHARLESTON.

## PECK *v.* CHAMBERS.

Submitted September 16, 1897—Decided December 11, 1897.

1. PROCESS—*Service of Process—Return.*

    Where the original process to commence a suit is returned not executed, it may be served by any credible person, and the return of such person, verified by his affidavit, shall be evidence of the manner and time of service. But a person, in order to be competent, to serve and return such process, must be a credible person. (p. 276).

2. PROCESS—*Return—Conclusiveness of Service.*

    Such return made by a private person is not conclusive, and may be shown to be false by direct attack, and the facts therein stated may be controverted by evidence. (p. 275).

3. JUDICIAL SALE —*Purchaser—Record.*

    A purchaser at a judicial sale is not protected by section 8, chapter 132,. Code, when the record of the suit shows that necessary parties interested in the property sold were not before the court when said sale was ordered and confirmed. (p. 276).

Appeal from Circuit Court, Logan County.

Suit by J. A. Peck against A. C. Chambers, L. D. Chambers, and R. N. French to set aside a deed.  Decree for plaintiff.  From a refusal to set aside the decree, French appeals.

*Reversed.*

SAMUEL L. WILLIAMS, for appellant.

VINSON & THOMPSON, for appellees.

ENGLISH, PRESIDENT :

On the 5th day of October, 1885, L. D. Chambers, as commissioner of school lands for Logan county, offered for sale at public auction, in pursuance of a decree of the circuit court of Logan county, three tracts of waste and unappropriated lands on Rum creek, in said county, one containing six hundred and sixty-one acres, one of one thousand two hundred and sixteen and two-thirds acres, and the other four hundred and forty acres, at which sale one A. C. Chambers became the purchaser thereof at one hundred dollars, eighty-five dollars and one hundred and twenty-five dollars, respectively, which sales were reported by said commissioner to said circuit court, and confirmed at the October term, 1886.  One-third of the purchase money was paid in cash, and for the residue three notes were executed by said purchaser, with J. A. Peck and L. D. Chambers, Jr., as sureties.  The money with which to make the cash payment was furnished by said Peck to A. C. Chambers, who, in consideration of said sum and fifty-five dollars to be paid by said Peck on the purchase money, sold one undivided half of said lands to said Peck.  On November 27, 1886, and before said deferred installments were paid, said A. C. Chambers conveyed by deed to R. N. French all of his interest in said three tracts for a certain sum in cash and the assumption by French of the unpaid purchase money.  J. A. Peck paid said sum of fifty-five dollars on the purchase money, and, as security for said Chambers, paid the residue of the purchase money.  At September rules, 1887, said Peck filed his bill in equity against A. C. Chambers, L. D. Chambers, commissioner of school lands, and R. N. French, alleging these

facts, and claiming that the sale from A. C. Chambers to R. N. French was void, and also claiming a lien on the interest so conveyed to said French for the sum of money he was caused to pay for said A. C. Chambers as his surety, and praying that said deed to R. N. French be declared void and set aside, and that the interest in said tracts of land might be sold to reimburse the sum he paid thereon as surety, *etc.* The summons to answer said bill was served by the sheriff of Logan county on A. C. Chambers and L. D. Chambers, commissioner, *etc.*, and there was a return of service of said summons on petitioner, purporting to have been made and verified by a private person, and not by an officer. Neither of said defendants appeared to said bill, and the cause was heard on the bill taken for confessed, and decree was rendered on the 4th of October, 1887, granting the relief prayed for, vacating the sale and deed to said French for the one-half of said land, and giving the plaintiff a lien thereon for one hundred and seventy-three dollars, decreeing a sale of said interest, and requiring L. D. Chambers to convey said land to A. C. Chambers and J. A. Peck. Pursuant to this decree said half interest was sold by a special commissioner, and purchased by said Peck for four hundred and thirteen dollars and forty-four cents, which sale was confirmed by a decree entered on the 2d day of April, 1888. On July 20, 1891, said defendants filed in open court their joint and several notice of motion, with proof of service, to vacate and set aside the decree aforesaid rendered on the bill taken for confessed, for certain errors therein pointed out; and on July 29, 1891, said decree was set aside, vacated, and annulled, and the cause reinstated on the docket for further proceedings. On August 1, 1891, said French filed his answer and cross bill, in which, after denying some of the allegations of the bill, he alleged that his purchase of one-half interest in said three tracts was for a valuable consideration, and in good faith, and denied that the plaintiff had any lien by reason of having paid a part of the purchase money to the State on account of his suretyship for the purchaser. He also denied that the summons to answer the bill of the plaintiff had been served upon him by the private person who made a return of service thereof, and

verified the same, or by any other person, and averred that he had no notice or knowledge whatever of the institution and pendency of said suit till long after the decree and sale, and as soon as he learned of such suit he promptly engaged counsel to take the necessary legal steps to place him in *statu quo*. Depositions were taken tending to show that said summons was never served upon French, and that he was a nonresident of the State at the time said person stated in his return he had served it upon said French, and that he had no notice or knowledge of the pendency of said suit; and also that said French's purchase of one-half of said land was for a valuable consideration, and in good faith. The cause was heard, and the court decreed that the return of service of the summons on French, made and verified by a private person, under the statute, was conclusive on said French, and could not be impeached or denied, and refused to set aside the sale of the one-half of said interest to the plaintiff, Peck, by said special commissioner under the decree, holding that such sale was protected under section 8, chapter 132, Code, notwithstanding the plaintiff himself was the purchaser. The foregoing statement of facts is, in substance, taken from the petition of the appellant and is adopted for the reason that it is thought to be concise, fair, and accurate in its details; and from said last-named decree French obtained this appeal.

The first error assigned and relied upon by the appellant is that "the court erred in holding that the return of service by a private person is conclusive, and cannot be impeached, and in not holding that the return of service of the summons on petitioner in this case was wholly false and untrue, and decreeing accordingly." Was this error, under the circumstances of this case? Section 2 chapter, 124, Code, provides that "process to commence suits, including writs of *scire facias*, *mandamus*, *quo warranto*, *certiorari*, *prohibition* and the alias or other process, where the original is returned not executed, may also be served by any credible person, and the return of such person verified by his affidavit shall be evidence of the manner and time of service." In the case we are considering the attack upon the return was not col-

lateral, but direct, and, in order to overthrow the return, the authorities say the burden of proof is on the attacking party. Alderson, in his valuable work on Judicial Writs and Process (page 582, § 197), says: "Whenever it is proper and permissible to contradict and assail a return, the evidence, to prevail over it, must be clear, positive, and conclusive. On him who would impeach and deny a return is the burden of proof." The same author, on page 569, says: "In considering the conclusiveness of a return, it is to be remembered that the return is a part of the record of the cause, and hence imports absolute verity, and is conclusive upon the parties until set aside by some direct proceeding for that purpose." "Though the return be false, the parties cannot dispute or impeach it collaterally. It is conclusive evidence of all the facts which are in the scope of the officer's duty in executing the process, and beyond collateral attack." "As a general rule, in the absence of fraud or mistake, it certainly cannot be maintained that the return of the sheriff can be varied or contradicted by parol testimony in a collateral proceeding. Such are the views generally expressed and accepted, which for the most part concern the process of execution. But the collateral attack of a return by a party to the litigation involves the right of a defendant, when it is sought to enforce judgment against him, to deny the recital in the return that he was duly served with summons. This question has received extensive consideration in a previous chapter, and we are confirmed in the opinion there expressed, that, whether the judgment be domestic or foreign, no recital in the record as to service of summons should preclude its truth being questioned and determined, even in a collateral proceeding. As to this matter, the law has been progressive, rejecting the harsh rule that demanded the prevalence of principles of public policy over those of natural justice. * * * The rule which precludes one from asserting his rights and protecting his person and property, under any circumstances, because an officer, through ignorance, carelessness, or fraud, certifies to a falsity, will in time yield to one which will be founded more on principles of right than on the dictates of public policy. The doctrine of absolute verity of judicial rec-

ords has been carried to the threshold of sacredness, and
to the sacrifice of that which is just and equitable. But,
by motion or other direct proceeding for the purpose, the
return is not in America conclusive between the parties to
the litigation. The rule of the English common law is that,
as between the litigants and their privies, a sheriff's re-
turn is conclusive, and the truth of the facts therein stated
will not be determined on motion or otherwise; that the
only remedy of the injured party is by an action for false
return. But there is reason for modifying the English
rule in America, and adapting it to the changed condition
of the law. In England the sheriff was the only officer
who could serve process, which was authorized to be per-
sonal only, while in America disinterested persons may
serve writs, and personal service is not always required."
In the case of *Stewart* v. *Stewart*, 27 W. Va., 167, this
Court held (tenth point of syllabus) that, "where the sher-
iff has returned the process served upon the defendants,
and the court has ordered the bill taken for confessed as
to them, and final decree has been entered in the cause,
one of such defendants will not be permitted to contradict
the return of the sheriff to such summons, and show that
the process was not served on him in this State, but in an-
other state." In that case the process was served by the
sheriff, and the Court in its opinion quotes from Comyn's
Dig. tit. "Return, G," "The reason assigned for not
admitting an averment against the return of a sheriff is
that he is a sworn officer, to whom the law gives credit,"
and says, "We see no reason for departing from the rule
of the common law." In the case we are considering the
process does not purport to have been served by the sher-
iff or any other officer, but by a private individual. This
could only be done under the statute (section 2, chapter
124, Code), providing that "process to commence suits,"
*etc.*, "where the original is returned not executed, may
also be served by any credible person." Now it must be
presumed that the legislature meant something when it
used the word "credible;" it surely thereby designated a
class of persons who might serve process. Bouvier in his
dictionary defines "credible witness" as "one who, being
competent to give evidence, is worthy of belief;" and Web-

ster defines a "credible" person as one "worthy of belief." In order, then, that a person should be competent to serve process under the statute, he must be a person worthy of belief. It clearly was not intended that every person should be competent to serve process, for, if it had been, the distinguishing word "credible" would not have been used; and, again, the reason for using this word appears from what follows; for the statute adds, "And the return of such person, verified by his affidavit, shall be evidence of the time and manner of service." In order that it should constitute such evidence, the person must be credible, and it is highly important that the person exercising such an important duty should be entitled to credit. If the return of process by persons unworthy of credit is to be held conclusive and unassailable, the property and rights of individuals would be no longer safe. A false return may be made, and instead of the sherff's bond, which may be resorted to where a sheriff makes a false return, the defendant would be left to his suit against a man frequently who is bankrupt in morals as well as estate. The evidence in this case not only shows that the person who claims to have executed this process upon the defendant French was not such a person as was competent to serve such process and make such return, but that, in fact, the return was false, and the process was never served. The court, therefore, had no jurisdiction to render the decree it did, directing the sale of the interest of said French in said lands. The court, not having the proper parties convened, could not decree a sale of said lands by piecemeal, and could not decree that the deed from A. C. Chambers to French was made for the purpose of defrauding the plaintiff, and was therefore null and void, when there was no allegation of fraud in the plaintiff's bill.

The second assignment of error claims that the court erred in refusing to vacate and annul the sale of an undivided half of said land, made by a special commissioner to the plaintiff, Peck, under the decree, and in holding that such sale was protected by section 8 of chapter 132, and in confirming and approving said sale. This Court in the case of *Underwood* v. *Pack*, 23 W. Va., 704, held that "a purchaser at a judicial sale is not protected by section 8 of

chapter 132 of the Code, when the record of the suit shows that necessary parties interested in the property sold, having liens thereon, were not before the court when said sale was ordered and confirmed." In the case of *Capehart* v. *Dowery*, 10 W. Va., 130, it was held that, "where a sale of property is made under an order of sale in an attachment suit, in a case where the parties interested in the property are before the court, and the sale is confirmed, and the order of sale, the sale itself, and the order confirming the sale are free from fraud, under section 8 of chapter 132 of the Code, the title of the purchaser at such sale is not affected by the reversal or setting aside of the order under which the sale is made." The Court in its opinion said: "Of course, it must be understood that such sale is in a case where the parties interested in the property are before the court, and the decree of sale, the sale itself, and the confirmation of the sale are free from fraud. There is no doubt that a purchaser could get no title and would not be protected by said section 8 if the owner of the property was not before the court. It is also clear that the purchaser could not be protected under said section if parties who the record shows were necessary, being interested in such property by having liens thereon, were not before the court. If those whom it was necessary to make formal defendants to the suit were not parties, either formally or informally, and were not before the court, the purchaser would not be protected in his purchase, under said section 8 of chapter 132."

It being clear that in the case at bar the defendant French was not before the court at the time the sale of said land was directed, or when it was confirmed, the purchaser at the sale made under said decree was not protected, under section 8 of chapter 132 of the Code, and the circuit court erred in holding that he was thus protected. For these reasons the decree complained of must be reversed, and the cause remanded, with costs.

*Reversed.*