Pennsylvania Co. *v.* Hunsley.

---

PENNSYLVANIA COMPANY *v.* HUNSLEY.

[No. 2,752.   Filed October 11, 1899.]

INSTRUCTIONS.—*Invasion of Province of Jury.*—*Preponderance of Evidence.*—*Intelligence of Witness.*—An instruction that " The preponderance of evidence in this case does not depend alone on the number of witnesses who testified for or against the existence of any particular fact or state of facts. In determining upon which side lies the preponderance of evidence, you *should* take into consideration the intelligence and candor of the several witnesses," etc., is an invasion of the province of the jury. *pp. 39-50.*

INTERROGATORIES TO JURY.—*Railroads.*—*Damages.*—*Fires Escaping from Right of Way.*—In an action against a railroad company for damages caused by fire escaping from its right of way, the condition of the right of way was a material fact in the case, and an interrogatory to the jury, asking if there was not a short growth of grass at

Pennsylvania Co. v. Hunsley.

a certain place on the right of way which was not burned over by the fire, should have been submitted.  *p. 50.*

EVIDENCE.—*Cross-Examination of Witness.*—No error was committed in sustaining an objection to a question asked plaintiff on cross-examination, if he would not accept the amount of his demand in settlement of his claim if he could get it.  *pp. 50, 51.*

SAME.—*Cross-Examination of Witness.*—Where, in the trial of an action against a railroad company for damages on account of fire escaping from defendant's right of way, the plaintiff stated on cross-examination that he had another suit pending with his brother against defendant for the same fire, it was proper to ask him the amount of his claim in that case.  *p. 51.*

SAME.—*Cross-Examination of Witness.*—Where a witness admitted on cross-examination that he wanted plaintiff to recover, no error was committed in excluding questions asked him as to whether he wanted other parties, in similar actions against defendant, to recover.  *p. 51.*

SAME.—*Opinion Evidence.*—A witness, who was shown to be a farmer residing in the same county in which plaintiff's land alleged to have been damaged by fire was situated, had passed and repassed the land for about five years, and had been over the land after the fire, was competent to testify as to the value of the land before and after the fire.  *p. 51.*

INSTRUCTIONS.—*Railroads.*—*Fires Escaping from Right of Way.*—*Measure of Damages.*—An instruction in the trial of an action against a railroad company for damages caused by fire escaping from its right of way, that "in determining the amount of damages, if any, sustained by the plaintiff, you should be guided by the evidence introduced, and may take into consideration the opinions of the many witnesses as to the value of the land," is not erroneous when considered in connection with another instruction previously given informing the jury that the measure of the damages was the diminution of the market value of the land occasioned by the fire.  *pp. 51, 52.*

EVIDENCE.—*Depositions.*—*Opinion Evidence.*—Where, in the trial of an action against a railroad company for damages to plaintiff's land caused by fire escaping from defendant's right of way, the plaintiff offered in evidence certain depositions in which the deponents stated that they owned muck land, similar to plaintiff's, that they had fires on such land, and that fires were a benefit, and not a detriment, the action of the court in refusing to admit the depositions in evidence, on the ground that it was not shown that deponents had seen plaintiff's land, was error.  *pp. 52, 53.*

From the St. Joseph Circuit Court.  *Reversed.*

*Allen Zollars, C. H. Worden* and *F. E. Zollars,* for appellant.

*Frank E. Osborn* and *H. W. Sallwasser,* for appellee.

COMSTOCK, C. J.—The complaint avers in substance that in September, 1895, and prior thereto, appellant railroad extended in an easterly and westerly direction through and across the south part of section ten, township thirty-four north, of range three west, in La Porte county, Indiana; that at said date plaintiff was the owner and in possession of forty acres of land north of said tract; that appellant negligently permitted dry grass, weeds, and other combustible material to accumulate on its right of way, to the north of said railroad track, at a point in the southeast quarter of said section ten, and negligently set fire to the same, and negligently permitted the fire to escape from its right of way to the lands adjoining on the north, and said fire continuously burned over and across to the lands of the plaintiff. The complaint avers that the land was by nature well set in grass and produced large crops thereof annually from the roots remaining in the soil without re-seeding or cultivating. The cause was, upon change of venue, tried in the St. Joseph Circuit Court. A trial by jury resulted in a verdict and judgment in favor of appellee in the sum of $320. With the general verdict the jury returned answers to interrogatories. The assignment of errors contains but two specifications: (1) That the court erred in overruling appellant's demurrer to the complaint. (2) The court erred in overruling appellant's motion for a new trial. The latter only is discussed. The complaint does not charge any defect in the locomotive from which it is alleged sparks of fire dropped, igniting the combustibles on the right of way, nor in its management. The controlling question, therefore, was whether the fire originated on appellant's right of way.

Appellant's brief calls attention of the court to the fact that a much larger number of witnesses testified that the fire started outside of, than on the right of way; points out contradictions, inconsistencies, and improbabilities in the testimony of the witnesses for appellee, and for reasons stated, that we do not deem it necessary to set out, insists that appel-

lant's witnesses were entitled to the greater credit. A very careful and complete summary of the testimony is given for the purpose of showing that the verdict of the jury is based upon prejudice and not evidence, and for the further purpose of showing that the court erred in its instructions to the jury, and especially in the giving of the eighth instruction, which is in the following language: "The preponderance of evidence in this case does not depend alone on the number of witnesses who testify for or against the existence of any particular fact, or state of facts. In determining on which side lies the preponderance of evidence, you *should* take into consideration the intelligence and candor of the several witnesses, their opportunities of seeing or hearing the facts about which they testify; their ability to see where the fire originated, whether they were close or far from it, whether they were at or near the railroad when the fire started, or came to it after it had greatly extended; their conduct and demeanor while testifying; their interest in, or disinterestedness, if any, as to the result of this suit, and the probability, or improbability of their several statements, in view of all other facts proved in the case. You should also consider whether any of the witnesses are shown to have some motive for assisting either party, or whether any witness may have been active in hunting up other witnesses or testimony to benefit either party; and having carefully considered all these facts and circumstances, and all the evidence, you will, I trust, render a verdict in accordance with the evidence in the case." Counsel admit that in some cases it might be proper to instruct the jury as a general proposition that the preponderance of the evidence "does not depend upon the number of witnesses;" but when the court, "in view of the overwhelming number of witnesses in behalf of appellant as to the origin of the fire," instructed them that "the preponderance of the evidence in *this case*" does not depend alone upon the number of witnesses, that the court invaded the province of the jury. Counsel contend

Pennsylvania Co. *v.* Hunsley.

that the court had no right to say as a matter of law, that in this case the preponderance of the evidence does not depend alone upon the number of witnesses. It is claimed that that part of the instruction made a question of fact to be decided by them a question of law declared by the court, and that the jury would understand therefrom that there was good reason, in the opinion of the court, why the jury should not be controlled by the number of witnesses. It is also argued that the court invaded the province of the jury when it instructed them that they should take into consideration the intelligence, etc., of the witnesses. The objection to this part of the instruction was that the word *should* instead of *might* was used, and that, in effect, they were told "that a witness of greater intelligence should be given more credence than one with less intelligence." In support of this objection counsel cite a number of cases decided by our Supreme Court, giving quotations from the instructions involved, and what the court said in relation thereto.

In *Fulwider* v. *Ingels*, 87 Ind. 414-420, the court below gave the following instruction: "The opinion of witnesses, whose attention has been particularly called to the alleged insane person, who were familiarly acquainted with him, who had frequent opportunities of observing him and the operations of his mind, is ordinarily entitled to greater weight than that of witnesses of equal capacity whose opportunities of forming an opinion were more limited. The facts upon which the opinions of such witnesses are based have been given you, and you should weigh the opinion expressed with the facts testified and stated to you, upon which such witnesses based such opinion."

In speaking of that instruction the court said: "The tenth instruction is also erroneous. It tells the jury in substance, that where witnesses are of equal capacity, the opinions of those who have better means of knowledge are ordinarily of greater weight than the opinions of those who have less means of knowledge; but this leaves out of view the essential

element of credibility, and, even if true in fact, it is not a presumption of law.    It has been often held to be error to state to a jury, as a legal proposition, matter which, although true in point of fact, and therefore belonging exclusively to the jury, does not amount to a legal presumption. Thus it has been held error to instruct a jury that, other things being equal, oral testimony is entitled to greater weight than depositions.    *Millner* v. *Elgin*, 64 Ind. 197, 31. Am. Rep. 121; *Works* v. *Stevens*, 76 Ind. 181.    So it has been held error to instruct a jury that 'one interested will not, usually, be as honest and candid as one not so;' *Greer* v. *State*, 53 Ind. 420; *Veatch* v. *State*, 56 Ind. 584, 26 Am. Rep. 44; or that, if a person once knows a thing he is presumed to remember it; *Hinds* v. *Harbou*, 58 Ind. 121; or that, if a witness is interested in the result of a prosecution it tends to discredit him; *Pratt* v. *State*, 56 Ind. 179; or that the evidence of parties to the action and those related to them is not entitled to as much weight as the evidence of disinterested witnesses; *Nelson* v. *Vorce*, 55 Ind. 455; or to institute a comparison between the weight of the evidence of different witnesses; *Nelson* v. *Vorce, supra; Cunningham* v. *State*, 65 Ind. 377; *Wood* v. *Deutchman*, 75 Ind. 148.    The court in the tenth instruction did not merely tell the jury that the matters alluded to were matters which they had a right to consider and judge for themselves in determining the question as to the relative weight of the opinions of witnesses; to this there could have been no objection; *Pratt* v. *State, supra;* but the court went further, and told the jury how to determine the question, and so the court violated the principle of the foregoing decisions, and usurped the province of the jury."

In *Woollen* v. *Whitacre*, 91 Ind. 502, 503, the court was requested to instruct the jury in relation to the testimony of one of the interested parties, as follows:    "But you have the right, and it is your duty, to take into consideration that interest, together with his manner of testifying, and the consistency or inconsistency of his statements, if any; also, what

contradictory statements, if any, he may have made in relation to the matter in suit." In speaking of that part of the instruction so refused, the court said: "Indeed, that part of the charge requested, and refused, told the jury, in substance, that it was their duty to consider, among other things, the interest of a witness. If it be true, as a matter of law, that it is the duty of the jury to consider the interest of a witness in determining his credibility, then it would seem also to be their duty, as a matter of law, to give less weight to the testimony of a witness having an interest in the result of a suit than to that of one having no interest. However this may be as a matter of fact, it is not so as a matter of law. The decisions of this court are numerous to the effect that it is error for the court to say or intimate to the jury that any circumstance or fact should be considered by them to the disparagement of a witness' testimony. The court may properly say to the jury that, in considering the credibility of a witness, certain things may be considered by them; but it is error for the court to inform the jury, directly or indirectly, that such things must, as a matter of law, be regarded in determining the question of credibility. Whenever the court does so, it invades the province of the jury."

In *Shorb* v. *Kinzie*, 100 Ind. 429, the court instructed the jury as follows: "There has been some evidence given of admissions by the plaintiff, and upon this branch of the case the law is that verbal admissions or statements, consisting of mere repetitions of oral statements made some time ago, are subject to much imperfection and mistake, for the reason that the party making them may not have expressed his or her own meaning, or the witness may have misunderstood him or her, or, by not giving their exact language, may have changed the meaning of what was said. Such evidence should, therefore, be received by the jury with great caution. But admissions deliberately made and well understood are entitled to your consideration, especially when made against a party's own interest. The jury are the exclusive

judges of the weight of the evidence." In relation to that instruction, the court said: "Under *Newman* v. *Hazelrigg*, 96 Ind. 73, *Finch* v. *Bergins*, 89 Ind. 360, *Garfield* v. *State*, 74 Ind. 60, *Davis* v. *Hardy*, 76 Ind. 272, we think this instruction must be held erroneous. The last sentence in the instruction does not save the entire instruction from error. It did not withdraw the preceding matter, often held by this court to be objectionable, but left it to control the judgment of the jury."

In *Cline* v. *Lindsey*, 110 Ind. 337, this instruction was given: "20th. In weighing the testimony of witnesses, the jury should consider their capacity to understand the facts about which they testify, their opportunity of knowing the mental condition of the testator. The testimony of the testator's neighbors who have long been acquainted with him, and have had frequent intercourse with him, and whose attention has been particularly called to the testator, who have had frequent opportunities of observing his mind, is entitled to greater weight than that of a witness of equal sagacity, whose opportunities were more limited, etc." The objection made to this instruction was, that the court thereby invaded the province of the jury, by charging that the testimony of the testator's neighbors who had long been acquainted with him, etc., was entitled to more weight than the testimony of other witnesses of equal sagacity, whose opportunities had been more limited. In relation to the instruction, and the contention against it, the court said: "Considered without reference to any other charge that may have been given, the above instruction, in our judgment, is open to the objection urged against it. It may be true, as a matter of fact, that the testimony of the neighbors of the testator, who had the advantages and opportunities named, was entitled to more weight than the testimony of other witnesses of equal sagacity, who had less opportunities, because of less acquaintance with the testator; but that was a fact to be determined by the jury, and not by the court as a question of

law. * * * [page 340] In all such cases it is for the jury to determine for themselves to what witnesses they will give the most credence. They have a right to consider the fact that some of the witnesses may have had greater opportunities than others. The court may instruct them that they have such right, but it ought not to invade their province and undertake to determine for them what witness is most reliable."

In *Jones* v. *Casler*, 139 Ind. 382, the following instruction was given: "I instruct you that when witnesses are otherwise equally credible and their testimony otherwise entitled to equal weight, greater weight and credit should be given to those whose means of information were superior; and, also, to those who swear affirmatively to a fact, rather than to those who swear negatively, or to a want of knowledge or a want of recollection." In speaking of that instruction the court said: "The weight to be given to the testimony of any witness or class of witnesses is always a question for the jury and it is never proper to charge the jury, as a matter of law, that any witness or class of witnesses shall be received with greater consideration than any other."

In *Durham* v. *Smith*, 120 Ind. 463, the ruling of the court is correctly stated in the syllabus, as follows: "Where a jury is charged that witnesses residing near the testatrix, being more intimate with her, and having better opportunities of observation than those living farther away, other things being equal, are entitled to greater credit, the instruction is erroneous, as an invasion of the province of the jury."

In *Dodd* v. *Moore*, 91 Ind. 522, one of the instructions was as follows: "The weight which you give the testimony of a witness depends upon the interest which such witness may have in the result of your verdict. You therefore give such effect and force to the testimony of the plaintiff and defendant as you think would be proper in view of what may be at stake to the plaintiff and to the defendant respectively." In speaking of that instruction, the court

said: "The jury have the right, in all cases, in weighing and settling conflicts in testimony, to consider the interest which the witnesses may have in the result of the litigation; and it is proper to instruct them that they may exercise that right. It may be that in many cases witnesses unconsciously warp and color their testimony by reason of interest; and it may be that, in many instances, witnesses purposely falsify by reason of such interest; but whether such is the fact, in any given case, is a question of fact to be left to the jury. Surely, the courts cannot say, as a matter of law, that because a witness may have an interest in the litigation, less weight should be given to his testimony. In the instruction above set out, the province of the jury is invaded, and they are instructed, in effect, that, as a matter of law, less weight should be given the testimony of the parties, because they are interested in the result of the litigation."

In *Duvall* v. *Kenton*, 127 Ind. 178, one of the instructions was as follows: "The opinions of experts are received in evidence, and may be considered and weighed from a consideration of the skill of such experts and the truth of the hypothesis on which his opinion is based. The jury in judging of the weight of expert evidence should consider the character of the witness and the interest, if any, he has in the case." In relation to that instruction the court said: "Instructions of this character have often been adjudged by this court to be erroneous. * * * In the case of *Unruh* v. *State*, 105 Ind. 117, the instruction was as follows: 'The relatrix and defendant have testified, and they are both interested in the event of the suit. This fact should be considered in weighing their evidence, in connection with the other facts and circumstances which I have indicated apply to witnesses generally.' The court said of this instruction: 'It very clearly discredits the parties named, because they are interested in the event of the suit. The charge is, that it was the duty of the jury to consider the fact that the parties named were interested in the event of the suit. The jury

would not understand that on account of that interest greater weight was to be given to the testimony of interested parties. Very clearly, they understood that they were to give less weight to that testimony.' The jury are exclusive judges of the weight to be given to the testimony of any witness, and an instruction which hampers them in the exercise of their duty in that respect is erroneous."

In *Newman* v. *Hazelrigg*, 96 Ind. 73, an instruction that it was the duty of the jury to consider evidence of verbal admissions with caution was held to be erroneous.

In *Hartford* v. *State*, 96 Ind. 461, 466, 49 Am. Rep. 185, the court instructed the jury that in weighing the testimony of the defendant, it was their duty to take into consideration the fact that he was defendant. That instruction was held to be erroneous. Amongst other things the court said: "If it was the duty of the jury, as a matter of law, to consider the fact that the appellant was the defendant, in weighing his evidence, then it would seem to follow that, as a matter of law, his evidence was entitled to less weight on account of the fact referred to. *Woollen* v. *Whitacre*, 91 Ind. 502. The charge clearly conveyed the idea that as a leading rule of evidence the testimony of the appellant was not entitled to as much weight as that of other witnesses, unless, after considering the fact of his being the defendant, they were still able to give him credit. In other words, the jury must have understood that the fact of the appellant being the defendant cast suspicion upon his evidence, entitling it to less weight than it would have been entitled to if he had been a disinterested witness. * * * The jury both in criminal and civil cases are the exclusive judges of the evidence. In this they must be left untrammeled by the court's charges. If there is conflict in the evidence, the court may inform them that, as a matter of fact, they may consider the interest of a witness in determining his credibility, but it is error to tell them that such interest must, as a matter of law, be considered. It was said, in *Woollen* v. *Whitacre, supra:* 'The

court may properly say to the jury that, in considering the credibility of a witness, certain things may be considered by them, but it is error for the court to inform the jury, directly or indirectly, that such things must, as a matter of law, be regarded in determining the question of credibility. Whenever the court does so, it invades the province of the jury'." See, also, *Nelson* v. *Vorce,* 55 Ind. 455; *Hinds* v. *Harbou,* 58 Ind. 121; *Pratt* v. *State,* 56 Ind. 179; *Veatch* v. *State,* 56 Ind. 584, 26 Am. Rep. 44; *Greer* v. *State,* 53 Ind. 420; *Millner* v. *Elgin,* 64 Ind. 197, 31 Am. Rep. 121; *Works* v. *Stevens,* 76 Ind. 181; *Voss* v. *Prier,* 71 Ind. 128.

In *Unruh* v. *State,* 105 Ind. 117, 124, one of the instructions was as follows: "The jury are the judges of the credibility of the witnesses, and in determining the weight to be given to the testimony of the different witnesses, you should consider the relationship of the witnesses to the parties, their interest in the event of the suit, etc." In relation to that instruction, the court said: "Here again, it is enjoined upon the jury as a duty, in determining the credibility of witnesses, to consider their interest in the event of the suit, and their relationship to the parties. And here again, by the phraseology of the instruction, discredit is thrown upon the classes of witnesses named. * * * The jury had a right to consider that relationship, if they thought it worthy of consideration, and might have been instructed as to that right, but to enjoin it as a duty, implied infirmity in the testimony by reason of the relationship. In these instructions, the court not only invaded the province of the jury, but indicated to them that, as a matter of law, the testimony of some of the witnesses was entitled to less credence than the testimony of others. For these reasons the judgment must be reversed."

In *Finch* v. *Bergins,* 89 Ind. 360, the court instructed the jury that evidence as to verbal admissions ought to be received with great caution; that such evidence is subject to much imperfection and mistake. That instruction was held

to be erroneous, for the reason that it invaded the province of the jury. The same ruling was made in *Lewis* v. *Christie*, 99 Ind. 377.

In *Bird* v. *State*, 107 Ind. 154, the jury were instructed as follows: "The defendant has testified in his own behalf. In weighing his testimony the fact that he is the defendant, and, therefore, deeply interested in the result of the prosecution, should not be overlooked, but it does not follow that because of his interest you should disregard his testimony or refuse to give him credit. Innocent men are sometimes charged with the commission of grave offenses. If the defendant's testimony, when compared with all the other facts and circumstances in evidence, is consistent and harmonious, it may have a controlling weight in deciding the case, but the weight it shall have is a matter left wholly to your consideration and judgment." In relation to that instruction, the court said: "This instruction cannot be sustained. Very clearly it discredits the testimony of appellant. It is equivalent to telling the jury that it was their duty to keep in mind the fact that appellant was the defendant, and that his testimony, for that reason, could not be taken as of controlling weight, unless consistent with all the facts and circumstances in the evidence. * * * It is true, the jury were also instructed that they were the judges of the credibility of the witnesses, including appellant, but, as to him, that must be limited by the portions of the sixth instruction above commented upon. From them, the jury would understand, that while they might judge of his credibility, it was under the injunction to keep in mind that he was the defendant and 'deeply interested in the result of the prosecution,' and that his evidence could not be of controlling weight in the decision of the case, unless consistent with the facts and circumstances in evidence against him. That appellant was an interested party is a fact that the jury might consider in weighing his testimony, and it would have been proper to instruct them

that they might exercise that right, but it was not proper to so instruct them as to impose a consideration of his interest as a duty, and thereby cast discredit upon his testimony in advance, and to destroy the controlling effect of his testimony in advance, unless it should be consistent with the testimony against him." See, also, *Morris* v. *State*, 101 Ind. 560; *Canada* v. *Curry*, 73 Ind. 246, 252; *Moore* v. *State*, 85 Ind. 90; *Long* v. *State*, 23 Neb. 33, 36 N. W. 310; *Johnson* v. *People*, 140 Ill. 350, 29 N. E. 895; *McMinn* v. *Whelan*, 27 Cal. 300. Judged by the foregoing decisions, this instruction must be held bad. Nor can we say in view of the evidence that this error did no harm.

The fourth reason for a new trial is based upon the refusal of the court to submit to the jury interrogatory thirty-two, as follows: "Was there a short and green growth of grass upon the right of way extending from the line of the old fence post on the north to the bank or fill of the railroad which was not burned over by the fire on the 20th day of September, 1895?" There was evidence that at the time of the fire the right of way from the tract to the fence post on the north was covered with a short growth of green grass, in which fire did not burn on the day appellee's property was injured. As the condition of the right of way was a material fact in the case, the interrogatory should have been submitted. §546 Horner 1897.

Appellant propounded to appellee upon cross-examination the following question: "You demand $500. Would you take that if you could get it?" To which question the court sustained an objection. This is the twenty-eighth reason given for a new trial; in this there is no error. The sustaining of an objection propounded to the same witness is made the twenty-ninth ground for a new trial. Appellee in answer to an interrogatory on cross-examination stated that he had another suit pending with his brother John against appellant for the same fire. "There you ask $1,500?" This question was proper. The answer would have shown the ex-

tent of his interest; an interest not limited to the amount involved in the trial in progress.

Appellant propounded upon cross-examination to Louis Lapp the following questions: "You want John Hunsley to get some money out of the railroad company, don't you?" "Don't you want Goff and Glang to recover against the Pennsylvania Company?" "And don't you want them to recover so that if you ever have a fire on your mother's land she may recover also?" The exclusion of these questions constitutes the thirtieth, thirty-first, and thirty-third reasons for a new trial. The witness had already stated in answer to a question of appellee, that he wanted William Hunsley to get money out of the railroad company because he thought he deserved it. The witness having admitted his interest in the success of the plaintiff, the court did not err in excluding these questions.

The thirty-seventh, thirty-eighth, and thirty-ninth reasons for a new trial are based upon the ruling of the court in allowing Ira G. Sparks, a witness for appellee, to testify as to the value of appellee's land before and after the fire. It is claimed that this witness had not shown himself qualified to testify. The witness testified that he was a farmer, owner of real estate, and residing in La Porte county, Indiana; that he knew the forty acre tract of land of appellee; that he had passed and repassed it along the road for about five years; that he had been over the land after the fire. The exception was not well taken. The value of his testimony depended upon his knowledge of the land, but we are clearly of the opinion that he showed himself possessed of knowledge qualifying him to give an opinion

Nor did the court err in the seventh instruction read in connection with the sixth to which counsel refers in this connection, which instruction is in the following language: "In determining the amount of damages, if any, sustained by the plaintiff you should be guided by the evidence introduced, and may take into consideration the opinions of the many witnesses as to the value of the land." The sixth

instruction is as follows: "The measure of damages is the diminution of the market value of the land occasioned by the fire; that is to say, the difference between the value of the land immediately before and immediately after the fire."

The sixty-first and sixty-second reasons are for the refusal of the court to permit appellant to read the depositions, respectively, of Isaac B. Suman and Samuel C. Hackett. These depositions were offered for the purpose of showing that the burning of muck lands is a benefit, and not a damage. Appellee's land was shown to be muck land, composed of decayed vegetables and roots. The deponents, in these depositions, stated that they had seen and owned muck land composed of decayed vegetables and roots; that they had fires on the land; that they were a benefit, and not a detriment.

We are informed by appellant's brief (appellee has not favored us with a brief) that the depositions were rejected because it was not shown that the deponents had seen appellee's land. These witnesses were offered as experts; they stated the facts upon which they gave their opinions, and then gave their opinions as the result of their knowledge by experience and observation. We are of the opinion that this ruling was error.

Mr. Abbott, in his work on Trial Evidence, at page 311, says: "After the qualities or grade on which the value depends have been proved, a witness qualified by special experience or knowledge to testify to the intrinsic value of the particular article, or to the market price of such articles (as the case may require), may testify to its value, although he has not seen the article. Such testimony may be founded on the witness having heard or read all the testimony which has been given by the party on the facts of quality, grade, etc., on which value or price depends; in which case the question may be: 'Assuming that the goods were as described by plaintiff (or other testimony heard or read by the

witness), what were they worth?' Or it may be called forth by a hypothetical question, embracing all the same facts which may fairly be assumed to be sufficiently in evidence."

Counsel also argue that instructions numbered four, five, and eighteen, given to the jury, are erroneous. We have examined them with care, and the authorities cited in reference thereto. While we are inclined to the opinion that they did not mislead the jury, they are justly open to criticism, but their faults are not likely to re-appear upon a second trial, and to discuss them would unduly extend the length of this opinion. For the same reason we do not pass upon other alleged errors.

Judgment reversed, with instruction to the trial court to sustain the motion for a new trial.