Henry Madden v. Saylor Coal Company, Appellant.

**Master and servant:** concurrent negligence. Where it appears from the evidence that an injury to an employé might have resulted from the negligence of the master alone, the fact that a negligent act of a co-employé operated therewith to produce the injury, will not relieve the master of liability.

Negligence: EVIDENCE. In an action for negligence based on the master's failure to properly support the roof of a mine entry the employé may show another safe and convenient way to support the same.

Opinion evidence. The statement of a witness which is no more than a conclusion to be drawn from the proven facts should be excluded.

Rebuttal evidence. Where the defendant has proven a custom respecting the usual support of a mine entry the plaintiff may show in rebuttal how the roof should be supported.

Instructions: EXPERT EVIDENCE. An instruction which permits the jury rather than expert witnesses to determine the materiality and importance of facts embraced in a hypothetical question is erroneous.

Instructions: PREPONDERANCE OF EVIDENCE. The question of whether the preponderance of evidence in a particular case depends wholly upon the number of witnesses is for the jury alone to determine, and the court has no right to instruct them where the preponderance lies.

Expert evidence: INSTRUCTIONS. The evidence of physicians testifying to the condition of physical injuries from an examination thereof is not subject to the same rule of scrutiny as other expert evidence based entirely upon hypothetical questions, and the same cautionary instruction with respect thereto should not be given; but in the instant case the error in the instruction is held to have been without prejudice when considered in connection with the other paragraphs of the charge.

*Appeal from Polk District Court.*— Hon. JAMES A. HOWE, Judge.

WEDNESDAY, MARCH 13, 1907.

SUIT to recover for personal injuries sustained by the plaintiff in the defendant's mine. Trial to a jury, and verdict and judgment for the plaintiff, from which the defendant appeals.— *Reversed.*

*Ryan, Ryan & Ryan,* for appellant.

*Thomas A. Cheshire,* for appellee.

SHERWIN, J.— On the 1st day of February 1904, the plaintiff was in the employ of the defendant as a mule driver in its mine. The entry in which he was driving when he received the injury complained of contained two tracks — one of which was commonly used for the passage of loaded cars to the shaft, and the other for the passage of empties back into the mine. At the time of the accident the plaintiff was going south in this entry with some empty cars drawn by a mule, and was standing with one foot on the bumper of the forward car, and the other on the tail chain between the mule and the car. At the place where he was injured, there was an ascending grade into the mine, and the roof thereof was supported at this point, and for some distance on each side thereof, by props placed between the two tracks. At this particular time a trip of eighteen loaded cars was going north toward the shaft and, just before the trip met the plaintiff, the plaintiff's mule swerved from the track on which he was traveling to the left between a couple of the props and was struck by the loaded cars, and thrown over against one of the props, knocking it from its place. The removal of this prop caused slate to fall from the roof of the entry upon the plaintiff, inflicting the injury of which he complains. The plaintiff alleged that the defendant was negligent in not having propped the entry at this point with cross-timbers, and in placing the props between the tracks as they did, without securely fastening them at the top and bottom; and, further, in not providing lights for the entry at the point where the plaintiff was injured. In its answer, the defendant alleged that the plaintiff was guilty of contributory negligence; that his injury was due to the negligence of his co-employé, and that the plaintiff assumed the risk of the condition of the entry when he entered the defendant's employment.

The evidence discloses that just prior to the accident, which resulted in the plaintiff's injury, other mules which had been worked in the mine that day south of the point

where the accident occurred were turned loose on the empty track and started north in front of their drivers about the time that the trip of loaded cars passed over the knuckle before reaching the point of the collision; that one of the mules in charge of the driver Shivers was in the lead of these loose mules, and that when he started north Shivers struck him with his hand; that it was one of the rules of the defendant corporation that loose mules should not be permitted on the track ahead of the loaded trip. The appellant claims that Shivers' mule stampeded the plaintiff's mule, and that the act of Shivers in turning his mule loose with a slap was the real or proximate cause of the plaintiff's injury, and that, because thereof, the plaintiff is not entitled to recover; Shivers being his co-employé. There is nothing in this contention. In the first place there is no competent evidence tending to show that Shivers' mule was the cause of the plaintiff's mule leaving the track rather than the loaded trip of eighteen cars coming rapidly towards it on another track only two or three feet from the track on which it was traveling. Nor is there any testimony tending to show that Shivers was negligent in slapping his mule, or in turning it loose on the empty track, or that his actions caused the plaintiff's mule to turn in between the props. It follows therefore that defense cannot be predicated on any act of Shivers.

1. MASTER AND
SERVANT: concurrent negligence.

But, if this were not so, the jury were justified in finding that the roof of the entry at the point in question was insecurely supported by the prop in question, and that it was negligence on the part of the defendant in placing these props between the two tracks without securely fastening them at both ends, so that they could not be displaced by such a collision. And it is a familiar rule that the mere fact that some other causes operated with the negligence of the defendant to produce the injury complained of does not relieve the defendant from liability. The original wrong of the defendant concurring with some other causes, and

both operating proximately " at the same time in producing the injury, makes him liable, whether the other cause was one for which the defendant was responsible or not." *Gould v. Schermer,* 101 Iowa, 582; *Parmenter v. City of Marion,* 113 Iowa, 297; *West v. Ward,* 77 Iowa, 323; *Langhammer v. City of Manchester,* 99 Iowa, 295. It is a general rule that where several proximate causes contribute to an injury, each being a sufficient cause without the operation of which the accident would not have happened, it may be attributed to any or all of the causes; but it could not be attributed to a specific cause, unless without its operation the injury would not have happened. *Phinney v. Railway Co.,* 122 Iowa, 488; 1 Thompson on the Law of Negligence, section 54, and cases cited: *Watters v. City of Waterloo,* 126 Iowa, 199. It is apparent from the record in this case that the injury might just as well have happened if Shivers had not turned his mule loose on the empty track, for, if the plaintiff's mule left its track for any other reason than the approach of Shivers' mule, the action of Shivers would not be an independent cause of the injury. The question of the assumption of risk was properly submitted to the jury, and the evidence justifies its finding against the contention of the appellant. The burden of affirmatively establishing such defense was upon the appellant, and the jury found against it.

The appellant contends that the question whether the entry at the point in question should have been timbered by cross-timbers was immaterial to any issue in the case. But this cannot be so, because it was incumbent upon the plaintiff to show that the defendant was negligent in using props in the way and manner that it did, and, for the purpose of so showing, it was clearly competent to show another safe and convenient way of supporting the roof of the entry.

2. NEGLIGENCE: evidence.

There was no error in refusing to permit one of the appellant's witnesses to testify as to what caused Madden's

mule to turn from the empty track. The answer could have been nothing more than the conclusion of the witness drawn from facts which were before the jury, and from which the jury could draw its own conclusion.

**3. OPINION EVIDENCE.**

Complaint is made of the admission of testimony on the part of the plaintiff as to how the roof of an entry should be timbered. There is no merit in the complaint, however, because the defendant in support of its defense had offered evidence as to the usual custom of supporting similar entries in the mining district where it is located, and the evidence objected to was clearly competent in rebuttal.

**4. REBUTTAL EVIDENCE.**

The appellant contends that instructions asked by it to the effect that it was its duty to use reasonable care to furnish the plaintiff a safe place to work should have been given, and urges that while the instruction given by the court on the degree of care required by the appellant was abstractly correct, it should have been more particularly applied to the facts in this case. We think the jury was sufficiently instructed on this branch of the case, and that no reversal should be had because of the court's failure in the respect indicated.

In its fourteenth instruction the court told the jury that when expert testimony is received, " based upon a purely hypothetical statement of facts . . . if it turns out that such hypothetical statement of facts is in material and important particulars incorrect or untrue," it should attach no weight to the answers of such experts founded upon such hypothetical statement of facts. The effect of the instruction was to permit the jury, instead of the medical witnesses, to determine the materiality and importance of the facts embraced in the hypothetical question, and in this respect it was erroneous. The only province of the jury is to determine whether the facts are true. If found to be so, weight may

**5. INSTRUCTIONS: expert evidence.**

be given to the testimony of the witnesses; but, if found untrue, they are not to be considered. *Kirsher v. Kirsher,* 120 Iowa, 337; *Stutsman v. Sharpless,* 125 Iowa, 335; *Hall v. Rankin,* 87 Iowa, 261.

The second instruction given by the court was in the following language: " By the term ' preponderance of evidence ' as used in these instructions, is meant the greater weight of testimony. The preponderance of evidence is not alone determined by the number of witnesses testifying to a particular fact or state of facts. It is determined by fully and fairly considering and weighing all of the testimony of each witness, and the aggregate testimony of all the witnesses, giving to their testimony, and to the testimony of each, such weight as you may deem it entitled to when taken in connection with the other facts and circumstances, proven upon the trial of the case. But, in weighing the testimony, after having applied all the tests as to its credibility and weight found in these instructions for your guidance, while the weight of the testimony is not necessarily determined by the number of witnesses on either side of a controverted proposition of fact, yet, when the witnesses are of equal credibility, and the circumstances equally consistent with the evidence of each, then the number of witnesses would fairly determine the preponderance." The appellant complains of this instruction, because it invaded the right of the jury to determine the weight to be given to the testimony of witnesses, and the right to determine all fact questions in the case without any direction or attempt on the part of the court to control its action in that respect. While we regret the necessity of reversing the case because of error in this instruction, we are constrained to do so, for the reason that it was clearly prejudicial to the defendant. The court alone determines the competency of witnesses, and of the testimony which shall be admitted upon the trial of a case; but the credibility of witnesses, and the weight which shall be given

**6. INSTRUCTIONS: preponderance of evidence.**

to their testimony, when considered in the light of all of the surrounding facts and circumstances appearing in the case, is the exclusive province of the jury, and with this the court has no right to interfere by instruction or otherwise. The first part of the instruction is not complained of, and we set it out only for the purpose of presenting the instruction as an entirety. It is the second clause of the instruction that is claimed to be erroneous. The court therein in effect told the jury that if the witnesses were of equal credibility, and the circumstances proved equally consistent with the testimony of each witness, then " the number of witnesses would fairly determine the preponderance " of the evidence, as defined in the fore part of the instruction. The statement thus made to the jury was manifestly prejudicial. When we speak of the credibility of a witness, it refers only to his integrity, and to the fact that he is worthy of belief. The term does not imply that he has intelligence, or knowledge, or opportunity for knowledge of the particular facts in the case. *Bierbach v. Goodyear Rubber Co.,* 54 Wis. 208 (11 N. W. 514, 41 Am. Rep. 19) ; *Peck v. Chambers,* 44 W. Va. 270 (28 S. E. 706) ; *Noland v. McCracken,* 18 N. C. 594. And see, on the subject generally, 2 Words & Phrases, 1710, 1711.

Witnesses may be equally entitled to credit in so far as their being truthful is concerned, and still the testimony given by such witnesses may not be of equal value as proof of certain facts although the circumstances may be equally consistent with the testimony of each, for the reason that the intelligence of such witnesses and their means of observation may be entirely different. Their memories may not be of equal strength, and many other elements may appear to the jury which would have weight in determining the value of the testimony of each witness; in other words, while witnesses may be equally worthy of belief, the value which is ultimately to be placed upon the testimony of each witness can alone be determined by the jury, and, when a

trial court says to a jury that where the witnesses are of equal credibility the number thereof should determine the preponderance of the evidence, it clearly invades the province of the jury. It is never the province of the court to say to the jury what evidence shall or shall not be given weight. The testimony of an entirely credible witness may be as thoroughly contradicted by circumstances as by the testimony of other credible witnesses, and it is always dangerous for a trial court to indicate to the jury, by instruction or otherwise, its own conclusion as to where the weight of the testimony lies. Whether or not the preponderance of evidence in a particular case depends alone upon the number of witnesses is a question of fact to be determined by the jury, and the court has no right to instruct them as a matter of law where the preponderance may be. *Pennsylvania Co. v. Hunsley,* 23 Ind. App. 37 (54 N. E. 1071). On the error in the instruction, see the following cases: *Delvee v. Boardman,* 20 Iowa, 446; *Franks v. State,* 1 G. Greene, 541; *Robinson v. Illinois Cr. Co.,* 30 Iowa, 401; *Miller v. Mutual B. & L. Ins. Co.,* 31 Iowa, 216; *Saar v. Fuller,* 71 Iowa, 425; *Johnson v. Whidden,* 32 Me. 230; *Johnson v. People,* 140 Ill. 350 (29 N. E. 895); Bierbach v. Goodyear Rubber Co., *supra.*

The appellee in support of the instruction relies upon *Indianapolis St. Ry. Co. v. Schmidt,* 163 Ind. 360 (71 N. E. 201). In that case the jury was told " that if all other thinge were exactly equal in all respects, the witnesses of equal intelligence and credibility, having equal opportunities of knowledge, testifying with equal candor, intelligence, and fairness, the weight of the evidence under such circumstances should be considered to be on the side having the greater number of witnesses." In discussing the instruction, the court said: " If such a remarkable situation of exact equipoise in the character, credibility, knowledge, candor, intelligence, and fairness of the witnesses, as is described in this instruction, could by any possibility exist,

it would be difficult to find another or safer method of deciding the question of the existence or nonexistence of the facts to which the testimony related than to give the greater weight to the greater number. In such a dilemma the jury might well ask the court as a matter of law by what rule they were to be governed." And the court there held that if the instruction was erroneous no prejudice on account thereof appeared. There is a very marked difference between the instruction under consideration in that case, and the one we are dealing with, as a casual comparison of the two will show.

The appellant called physicians who had made a physical examination of the plaintiff who testified as to his physical condition as it appeared to them from their examination. Among other things, they testi-

7. EXPERT EVI-
DENCE: in-
structions.

fied as to the comparative length of his legs, and also as to certain marks on one of his thighs, and as to the appearance and condition of his flesh. In its thirteenth instruction the court said that: " Expert testimony is appropriate when the subject-matter of the inquiry is such that without such assistance inexperienced persons are unlikely to prove capable of forming a correct judgment upon it." The jury was further told in the same instruction that it was to determine the weight to be given to such testimony, and that " while it is proper for you to consider it, and give it such weight as you may think it justly entitled to, considering the amount of skill and knowledge possessed by the witnesses giving such testimony, you will, however, consider it with caution. It cannot overthrow positive and direct evidence of credible witnesses who testify from their personal knowledge." It was further said that: " When expert witnesses testify to matters of fact from personal knowledge, then their testimony as to such facts within their personal knowledge should be considered the same as that of any other witness who testifies from personal knowledge." This instruction is assigned as error.

The testimony of these physicians was not based upon hypothetical questions, but upon a physical examination of the plaintiff. It is, of course, a rule that where experts testify or give their opinions as to handwriting and matters of that kind, or opinions based upon purely hypothetical questions, their testimony shall be carefully considered, and that it cannot overthrow positive and direct evidence of credible witnesses who testify from personal knowledge; but there was nothing in the testimony of the physicians in this case calling for the caution given by the court in this instruction, or the statement that their testimony cannot overthrow the testimony of witnesses testifying from personal knowledge. Skilled physicians are clearly competent to testify to visible physical defects and are clearly better qualified to testify as to the probable effect of stated physical conditions than nonexperts. But notwithstanding the ill-advised direction of the second clause of the instruction, we are inclined to hold it to be without prejudice to the appellant because of the fact that it must have appeared to the jury that their testimony fell within the last clause of the instruction to which we have made reference .

Some complaints are made of other instructions, and of other matters occurring on the trial, but we find nothing further demanding specific consideration. The appellant's motion to strike from the files appellee's additional abstract of record, and to tax to the appellee the cost of printing the same, was submitted with the case, and it is overruled.

For the error in the instructions, the judgment must be, and it is, *reversed*.