F. L. HALFPAP, Appellee, v. HERMAN GRUIS et al., Appellants.

**NEGLIGENCE:** Operation of Automobile—Allegation of Ownership
1 and Operation—Presumption. An allegation of ownership of an automobile and of its operation on a named occasion carries the presumption that it was being operated by the owner himself or with his consent.

**LIMITATION OF ACTIONS:** Pleadings—Amplifying Amendments
2 After Statute Has Run. Principle reaffirmed that amplifying amendments to the pleadings in a timely instituted action are permissible after the time for bringing the action has fully run.

**TRIAL:** Instructions—Discrediting Expert Testimony. It is reversible
3 error to instruct the jury to consider expert testimony *"with caution."*

Headnote 1: 28 Cyc. p. 45. Headnote 2: 37 C. J. p. 1073. Headnote 3: 38 Cyc. p. 1649.

*Appeal from Cerro Gordo District Court.*—J. J. CLARK, Judge.

MARCH 17, 1925.

ACTION for damages growing out of an automobile accident. From a judgment on the verdict of a jury in favor of the plaintiff, defendant appeals.—*Reversed.*

*Senneff, Bliss, Witwer & Senneff,* for appellants.

*Robinson, Boomhower & Moe,* for appellee.

ALBERT, J.—The defendant Herman Gruis is alleged to be the owner of an automobile driven by Bennie Gruis, which collided with the buggy of the plaintiff on a public highway lead-

1. NEGLIGENCE: operation of automobile: allegation of ownership and operation: presumption.

ing south from the town of Meservey, Iowa. A complete cause of action is stated against Bennie Gruis, but the only allegation made in the petition with reference to Herman Gruis is the following: That an automobile belonging to the defendant Herman Gruis was being driven by the defendant Bennie Gruis, etc. Judgment is asked against both defendants for the sum of $5,000.

This accident occurred on the 16th day of September, 1920, at 9 o'clock P. M. The petition in the action was filed on the 29th of October, 1920. On the 8th of September, 1921, plaintiff filed an amended and substituted petition, in which the only allegation, so far as Herman Gruis is concerned, is identical with that in the original petition.

On the 12th of September, 1921, the defendants filed a general denial. On the 22d of September, 1922, defendant Herman Gruis was permitted to withdraw his answer and file a demurrer which attacks the petition for want of an allegation that Bennie Gruis was driving the car with the knowledge and consent of Herman Gruis, and for the reason that it did not appear from the petition that Bennie Gruis was a member of Herman Gruis's family.

Upon the filing of this demurrer, the plaintiff asked leave to amend, and, on the 14th of November, 1922, filed an amendment to his amended and substituted petition, in which he alleged that Bennie Gruis was the son of Herman Gruis, and a member of his family, and that, at the time in question, the car was being driven by Bennie Gruis, with the knowledge and consent of the owner, Herman Gruis. The date of this filing was more than two years after the date of the accident.

On the 28th of November, Herman Gruis filed a demurrer to the amendment last above referred to, contending two grounds: First, that, prior to the filing of the amendment, no cause of action was stated against the defendant Herman Gruis, and that between the time of the accident and the time of the filing of said amendment more than two years had elapsed, and

that the cause of action attempted to be pleaded in said amendment is barred by the statute of limitations. The second ground of the demurrer is a reiteration of the original demurrer filed by Herman Gruis. The defendant's demurrer was overruled; and this is one of the two questions raised on this appeal.

Many cases are cited from this jurisdiction on the question of whether or not the filing of this amendment was a statement of a distinct and independent cause of action against Herman

2. LIMITATION OF
AOTIONS: pleadings: amplifying amendments
after statute has
run.

Gruis, such as would call into operation the two-year statute of limitation; and it is a somewhat difficult task to attempt to harmonize various expressions of this court on the subject.

It will be noticed, however, that the amended and substituted petition herein contains a complete and perfect statement of a cause of action against the defendant Herman Gruis, with the exception of an allegation that the car, at the time, was being driven "with the consent" of Herman Gruis. We have consistently held that, where an amendment simply amplifies the cause of action stated, the statute of limitations is not available. These cases are quite fully discussed in *Basham v. Chicago G. W. R. Co.*, 178 Iowa 998; *Knight v. Moline, E. M. & W. R. Co.*, 160 Iowa 160; and similar cases. We are disposed to hold in this case, however, that the amendment was not necessary to a statement of the cause of action against the defendant Herman Gruis, and that the original amended and substituted petition was sufficient, under our later holdings on this question. In *Landry v. Oversen*, 187 Iowa 284, we pronounced this rule:

"The rule is well established that proof that defendant owned the automobile at the time his daughter was operating the same made out a prima-facie case that the vehicle was then in his possession, and that she was operating it for him. * * * This, however, is a mere inference that an owner probably is in control of his own property; and is to be given no greater weight than is required to compel the owner to identify those operating the vehicle, and explain by what authority, if not his own, it is being run. * * * The proof of ownership of the automobile at the time of the collision merely makes out, *prima facie,* that the automobile was being operated for the owner; and to avoid a finding to this effect, there must be some showing to

the contrary. The strength of the prima-facie showing neces-
sarily depends on the circumstances of each particular case.''

.     This doctrine is indorsed in the case of *Baldwin v. Parsons,*
193 Iowa 75; *Rowland v. Spalti,* 196 Iowa 208.

In *Curry v. Bickley,* 196 Iowa 827, at 832, referring to the
*Landry* and *Baldwin* cases, we said:                    .

''It is a wholesome rule that places upon the owner of a car
the burden of establishing that the car was not being operated,
at the time of an accident, by himself or under his direction, if
such be the fact.''

The holding of these cases is that an allegation of owner-
ship carries with it, as an inference of law, that the car is being
operated by the owner, or, if by someone else, that it is with
the owner's consent. This inference raised by the law need
not be pleaded, because it comes to the aid of the pleadings. It
therefore follows that the pleading attacked herein was not
vulnerable to the attack made upon it, and the statute of limita-
tions has no application.

The second question raised on this appeal arises from ob-
jection or exception to instructions given by the court. For
the understanding of this objection, some of the facts in the
case must be recited.

In the trial of the case, the plaintiff used two physicians, and
the defendant, one. These physicians all had seen and exam-
ined the plaintiff after the accident; and the principal part of

3. TRIAL: instruc-      their testimony is devoted to a description of his
tions: discredit-      condition and the injuries to his person as they
ing expert testi-
mony.                  saw it at the time. Each expresses some profes-
sional opinion as to plaintiff's condition.

Among others, the court gave Instruction No. 13, reading
as follows:

''In this case, expert testimony has been introduced of phy-
sicians who have examined the plaintiff as to his injuries. Ex-
pert testimony is appropriate when the subject-matter of the
inquiry is such that, without such assistance, inexperienced per-
sons are unlikely to prove capable of forming a correct judg-
ment upon it, or when it so far partakes of the nature of a
science as to require a course of previous habit or study to at-
tain knowledge of it; but it is not appropriate when the subject-

matter of the inquiry is not of such nature as to require any peculiar habits or study in order to qualify a man to understand it. It is for you to say how much weight shall be given to such testimony in this case; and while it is proper for you to consider it and give it such weight as you may think it justly entitled to, considering the amount of skill and knowledge possessed by the witnesses giving such testimony, *you will, however, consider it with caution.* You will consider such testimony and weigh it carefully in connection with all the other circumstances and evidence in the case.''

The objection to this instruction goes to the use of the phrase ''you will, however, consider it with caution,'' as italicized above. The specific objection lodged against the instruction is that, by giving the same, the court thereby invaded the province of the jury, and that it was improper to tell the jury to consider the testimony of doctors with caution, where they testified, as did the doctors in the instant case, from actual examination and actual knowledge of the patient; as there is no more reason to consider such testimony with caution, when witnesses are testifying from actual examination and knowledge, than that of any other witness.

This instruction, in the light of the testimony of these physicians, is subject to criticism from two viewpoints. First, as heretofore suggested, the principal part of the testimony of these physicians had to do, not with any question of opinion, but with what the physicians actually observed as to the physical condition of the plaintiff, as to the cuts and bruises on his body, and matters of that kind. Viewed from this point, the court should not have made the instruction broad enough so that the jury might reasonably infer therefrom that the rule given in the instruction for weighing the testimony of these physicians should govern matters of this character, as well as matters in which they gave purely opinions.

On the other angle, we are disposed to hold that the instruction given by the court tends to minimize the weight that should be given to the testimony of these physicians. We condemned instructions, in *Brush v. Smith,* 111 Iowa 217, and *State v. Townsend,* 66 Iowa 741, which told the jury, in substance,

that the law recognizes expert testimony as the lowest order of evidence.

An instruction almost identical with the one under consideration was given in the case of *Madden v. Saylor Coal Co.*, 133 Iowa 699, and the jury in that case was instructed to ''consider with caution;'' but there was an additional paragraph in said instruction which is not in the instruction given in the present case, which reads:

''When expert witnesses testify to matters of fact from personal knowledge, then their testimony as to such facts within their personal knowledge should be considered the same as that of any other witness who testifies from personal knowledge.''

In considering that case, the court said, at page 709:

''But notwithstanding the ill-advised direction of the second clause of the instruction, we are inclined to hold it to be without prejudice to the appellant, because of the fact that it must have appeared to the jury that their testimony fell within the last clause of the instruction to which we have made reference.''.

The sum total of the *Madden* case was that the use of this phrase in the instruction was error, but that it was cured by the last paragraph added to said instruction in the case, which is absent in the present case; and, as heretofore said, the doctors in this case testified to matters within their personal knowledge, as did the doctors in the *Madden* case; but the instruction given in the present case is wanting as to curative provision which was given in the *Madden* case.

In *Ball v. Skinner*, 134 Iowa 298, at 307, is this statement:

''In the twelfth paragraph, the statement that the jury should 'not allow expert evidence to overthrow positive and direct evidence of creditable witnesses, testifying from personal knowledge,' we think cannot be approved.''

In this same case the differentiation is made between experts generally, and those who are used on the question of disputed handwriting. This court has even held that the testimony of experts, under certain circumstances, is entitled to more weight than that of other witnesses. See *Meeker v. Meeker*, 74 Iowa 352; *Blake v. Rourke*, 74 Iowa 519; *Hofacre v. City of Monticello*, 128 Iowa 239.

We said, in the case of *Ball v. Skinner,* supra:

"A study of the precedents will develop some confusion in the statement of rules governing the weight and effect to be given to expert testimony; but the reasonable rule, applicable at least to the great majority of cases, would seem to be that expert testimony is to be given consideration like all other testimony which the court allows to go to the jury, and accorded such weight as, in view of all the evidence of every kind and nature, and its reasonableness and the apparent candor and competency of the witnesses, in fairness demand."

Measured by this, which we deem to be the correct rule, the instruction is erroneous and prejudicial.—*Reversed.*

FAVILLE, C. J., and EVANS and ARTHUR, JJ., concur.