W. R. GARRETSON, Appellee, v. W. L. HARLAN, Appellant.

No. 42566.

1050

OCTOBER 23, 1934.

H. F. Wagner, and Johnston & Shinn and H. E. De Reus, for appellant.

Vander Ploeg & Heer, for appellee.

DONEGAN, J.—Plaintiff filed an amended and substituted petition in equity in three divisions. In division one he alleged that on August 28, 1920, he and defendant entered into a written contract as follows:

"W. R. Garretson agrees to furnish operating room, including piping for water and gas, wiring for electricity; further maintain general office expense such as heat, light, gas, reception room, equipment, office girl, etc., including all dental supplies.

"W. L. Harlan to equip and own personally his operating room outfit and to be free to remove same at any time (with or without the consent of W. R. Garretson) when terms of this contract are balanced to date.

"W. L. Harlan to use own judgment as to fees, methods of collection, etc., and handle same as if alone and divide income as follows: 50% to W. R. Garretson and retain 50% (of all he does).

"Dr. Harlan agrees not to practice dentistry in Marion County after termination of this agreement except by consent of W. R. Garretson. In case W. R. Garretson should desire to sell, he agrees to give W. L. Harlan first chance to purchase.

"[Signed] W. R. Garretson.
"[Signed] W. L. Harlan."

That defendant had continued to work under said contract since the date thereof until the present time and had kept a separate set of books showing the work done by him, the charges therefor, and the money collected for said services, and that from such record a statement of the cash purported to have been received by defendant was entered in the books and the plaintiff was paid what was assumed to be one-half of the cash actually received. That plaintiff believed that a correct statement of cash received was made by defendant, but that, in fact, said statements omitted large amounts actually collected and received by defendant, and that, in order to ascertain such amount, it was necessary that there be an accounting by defendant.

Division two alleged, in substance, that defendant did a large amount of work for various parties for which no charges were made against said parties and no credits entered for cash received, and that the amount of cash so collected was not entered in the cash statements made by defendant; that plaintiff has no record of the amounts so withheld; and that the records showing the amount so collected by the defendant are beyond the control of the plaintiff and in the control of the defendant, and that the defendant should be held to account for the items so withheld.

In division three plaintiff alleged that due to the fraudulent acts of the defendant, as set forth in divisions one and two, the plaintiff is entitled to terminate said contract. Plaintiff prays that defendant be required to render an account of the cash collected by him on the charges made against individuals in the books kept by him and which were not reported in the cash statements made between the parties; that defendant be required to account for the services performed by him under said contract and for which no charge was made in the books kept by him and of the cash received by him in payment for such services. Plaintiff further prays that he have and recover judgment against the defendant in the sum of $5,000, or such amount as may be shown to be due him from the accounts furnished by defendant; that the plaintiff be decreed to be entitled to have the contract terminated; and that an injunction issue restraining the defendant from practicing dentistry in Marion county, Iowa.

To this amended and substituted petition defendant filed a motion to strike certain statements, and, subject to the ruling on such motion to strike, that plaintiff be required to make his petition more

specific by setting forth the amounts and names of persons from whom cash is alleged to have been received by defendant and omitted from statements, or settlements of cash, and the dates of such items; by setting forth the names of various parties for whom defendant is alleged to have done a large amount of work for which no charges were made and credits entered for cash received, and the dates when said services are alleged to have been performed and no credits made, and when the amounts of cash so collected were received; and by setting out the alleged fraudulent acts of the defendant upon which the cause of action is purported to be based.

This motion was overruled by the court and defendant thereupon filed a motion based upon a misjoinder of causes of action, in which he moved to strike from the amended and substituted petition the causes of action set out therein, for the reasons that the causes of action in divisions one and two are at law, and the cause of action in division three is in equity. This motion being overruled by the court, defendant filed an answer admitting most of the provisions of the contract sued on, but denying that the copy set out was a correct copy of the written agreement entered into by plaintiff and defendant, and alleging that in March, 1926, the written agreement was abrogated and a new oral agreement entered into under which it was agreed that defendant would continue to practice dentistry in the office of plaintiff under practically the same terms as set forth in the written agreement, but that either party would have the right to terminate the relationship at any time and that the defendant would be free to practice dentistry anywhere without the consent of the plaintiff. This answer denied all allegations of the amended and substituted petition not admitted or modified, and stated that the defendant intended to terminate his relationship with the plaintiff and to continue the practice of dentistry in Knoxville, Iowa, at a location other than the offices of the plaintiff. For reply plaintiff denied each and every allegation in the answer which is inconsistent with or contradicts or denies the allegations of the petition.

Prior to the trial of the case the parties entered into a stipulation in which it was agreed that Donald R. Colegrove and Walter Kester should go through the books, ascertain the total amount received by the defendant on the individual accounts, the total amount paid to the plaintiff by the defendant, and make a notation or memorandum of any changes or erasures found in the books; and that each party might object to any items contained in such report

and offer evidence as to items which should be added to such accounts either as charges against the defendant or as credits to which defendant is entitled. An order was made by the court authorizing the examination of the books by said parties and directing them to make a report to the court of their findings in accordance with the stipulation of the parties. Pursuant to such stipulation and order, a report was filed by the said examiners which contained notations in regard to various items contained in said books, and showed the total amount of cash credits received by defendant, out of which plaintiff should have received 50 per cent, to be $86,497.17. Such report also showed that the total amount reported by defendant to plaintiff, was much less than $86,497.17.

Upon the trial of the case the trial court filed an opinion in which it found in substance that a written agreement existed substantially as claimed by plaintiff, and that such agreement had not been abrogated by the new agreement alleged by defendant to have been entered into between the parties in March, 1926; that the defendant had collected from various parties the sum of $3,455 which had not been reported in the statements and one-half of such amount paid to the plaintiff; and that the plaintiff was entitled to an injunction under the terms of the contract restraining the defendant from practicing dentistry in Marion county, Iowa. A judgment and decree was entered in which plaintiff was given judgment in the sum of $1,727.50 against the defendant and it was ordered that an injunction issue as prayed. From such judgment and decree and all prior orders and rulings, the defendant appealed.

As this is an equitable action, it is triable de novo in this court. While this court will not be confined to a consideration of the errors alleged by appellant, the matters set forth therein will be given due consideration. Appellant's first and principal contention is that the trial court should have found that the prohibitive clause of the original contract was abrogated by the parties by a new agreement made in March, 1926. Before considering this proposition, which goes to the merits of the case, we will direct our attention to the appellant's contentions that the trial court should have sustained his motion for more specific statement and his motion to strike the causes of action set out in the different divisions of the petition on the ground of misjoinder.

■ I. As the amended and substituted petition, to which the motion for more specific statement was directed, quite clearly alleges

·that the books and records, in which the amounts received by defendant were credited and the amounts paid by defendant to plaintiff as his one-half of such credits were set forth, were kept by the defendant and were in the possession of the defendant and beyond the control of the plaintiff, we think it sufficiently appears that the plaintiff was not in a position to furnish the information called for by the motion, and that such information was more available to the defendant than to the plaintiff. As we shall see later, the action was in the nature of a discovery and for an accounting, and the plaintiff could not be expected to furnish the information as to the facts which he asked to be revealed by the discovery and accounting. Moreover, the appellant appears to make no contention that he was surprised and not allowed to make an investigation as to any of the items of account, or that he has been prejudiced in any way because of the court's finding as to the amount due from him to the plaintiff. As a matter of fact, while the report made by the men who examined the books showed that the defendant-appellant had received $4,610.88 for which no payment had been made to the plaintiff, the trial court went over the books item by item and reduced the amount for which no division or accounting had been made to $3,455, and the trial court in his opinion stated: "In reaching these figures I have given the defendant the benefit of the doubt in each case where I thought there was doubt." Even if erroneous, we find nothing in the ruling of the trial court that would prejudice the appellant on the trial of the cause *de novo* in this court.

II. While the amended and substituted petition contained three divisions, we think a fair reading of the same will show that this pleading did not intend to and did not purport to set forth three separate causes of action. Divisions one and two both alleged facts sufficient to show that plaintiff was claiming that the defendant had violated the contract by failing to pay plaintiff money due him thereunder; that the evidence which would show such violations was contained in and could only be obtained from the books and records which had been kept by and were in the possession of the defendant; and that the items of the evidence upon which plaintiff expected to establish his claim were so numerous and complicated that an accounting was necessary. The third division alleged that the fraudulent acts of the defendant as set forth in the first two divisions entitled the plaintiff to a termination of the contract. The prayer, it is true, asks for judgment in the sum of $5,000, but it also asks

that the judgment be for "such amount as may be shown to be due him (plaintiff) from the accounts furnished by the defendant," and for a termination of the contract and an injunction pursuant to the terms thereof. In 1 C. J. 617 and 618, it is said:

"Although discovery is not the sole ground of equity jurisdiction in matters of account, it was one of the sources thereof where there was a want of power to draw out the proofs from the consciences of the parties; and where such aid is necessary in matters of account the court will as a general rule assume jurisdiction not only of the matter of discovery, but will also proceed to adjust the account, notwithstanding the matters involved are purely legal; the court, having acquired jurisdiction, will retain it for complete relief and to prevent a multiplicity of suits. * * *

"It is also well settled that where the accounts are complicated this constitutes of itself sufficient ground for the assumption of jurisdiction by a court of equity, although no fiduciary relation exists between the parties. In order that a court of equity may assume jurisdiction on the ground of complexity of accounts, it is not essential that the accounts should be mutual, that is, consist of items on both sides, provided that they have become so complicated as to embarrass the remedy at law. This rule is applied where the account is made up of many items for and against each party, or the items are numerous and extend over a long period of time." See, also, Burt v. Harrah, Admr., 65 Iowa 643, 22 N. W. 910.

We think the action was properly brought in equity for an accounting, and that there was no error on the part of the trial court in refusing to sustain the motion based upon a misjoinder.

III. Coming to the merits of the case, both parties admit that the gist of the suit is whether the original contract was terminated and abrogated by a new oral agreement which was entered into in March, 1926. The burden of establishing such termination and abrogation of the original contract by such new agreement was, of course, upon the defendant-appellant. Appellee contends that the evidence to establish the modification, abrogation, or termination of a written contract must be clear, satisfactory, and conclusive, and that a mere preponderance is not sufficient. He also contends that, even assuming the evidence to be sufficient, there is no consideration for the alleged new agreement and it cannot set aside the original contract. In the view we take of the case, it is not necessary to

determine either of these questions. We will assume that a preponderance of the evidence is all that is necessary to establish the alleged new agreement and that, if established, there is sufficient consideration to support it. The question for our determination is, therefore,—Is the alleged new agreement shown by a preponderance of the evidence?

While the evidence introduced on the trial of the case is quite voluminous, the direct evidence as to the alleged new oral agreement claimed by the appellant is quite brief. Appellant claims that in March, 1926, the appellee had taken one of the appellant's patients into appellee's chair and that this action of the appellee brought about a controversy; that both appellant and appellee retired to the laboratory which was separated from the waiting room and operating rooms, and there, in the presence of one Theodosia Crossen, who was then the bookkeeper and office girl, appellant and appellee had an argument at the termination of which a new agreement had been entered into. The material parts of such argument and conversation between appellant and appellee on this occasion, out of which it is claimed the new agreement· arose, are, according to appellant's testimony, substantially as follows:

" * * * Then he remarked you can't practice dentistry in Marion county if you leave this office. * * * I told him whether I could or not I fully intended and was going to do so. * * * He said there is certainly some way to come to an agreement, and I told him not along those lines, that we was through so far as I was concerned, * * * and after debating there he said I will tell you, Harlan, if you will do this we will straighten it up; he said I will lay off your patients and let them alone, and I said, Doctor, that does not fill the bill at all, and we argued back and forth some, and he said I will tell you, we will continue to operate here as we have in the past, and he said I will promise we will make no restrictions on your business if you want to stay here and operate, he says do it, and he says I will not interfere with patients and if you want to practice anywhere at any time you can feel free to do so, and I stayed under this condition. * * * I told him under those conditions and those only I was remaining." Appellant further testified that no writing was made of the new agreement, and that, following the talk above related, "I went back in the operating room and went to work, I had a patient sitting in the chair."

Theodosia Crossen testified in regard to this conversation substantially as follows:

"Dr. Harlan said * * * if he could not have his own patients he would get out, and Dr. Garretson told him to get out, and he said when you get out, you are getting out of town, you can't practice here in Marion county, and Dr. Harlan said he would, and he said right away in Knoxville, * * * and they argued there quite a while and then Dr. Garretson said we have too good a practice here to fall out over little things like this, and he said why don't you forget this and go back to work. Dr. Garretson said that and he said you can have your own patients and I will furnish the place and pay the expense and you give me fifty per cent of what you take in, and if at any other time you feel you want to move you can be at liberty to do so.

"Q. What did Dr. Harlan say, if anything? A. The next thing I knew he was going back to work.

"Q. Was anything said as to where he could go if he got out? Mr. Vander Ploeg: Objected to as leading. The Court: Taken subject to the objection. Exception saved.

"Q. State whether or not there was anything said by them. A. He said he could feel at liberty to practice wherever he pleased.

"Mr. Vander Ploeg: Move to strike the answer for the reason it follows a leading question.

"The Court: It may stand subject to the motion, I think it is well taken, however. Exceptions saved."

Appellee testified that he remembered an occasion on which he had taken the patient (the Core child) into his chair; that he had previously examined this patient and made a model of her mouth; that, Dr. Harlan being busy, he had merely placed the patient in his chair to again examine the condition of her mouth with no intention of interfering with Dr. Harlan's patient; and that, upon being told that Dr. Harlan claimed her as his patient, she was immediately placed in appellant's chair and no charge was ever made by appellee. He further testified that there was no particular controversy in regard to this patient and denies the conversation which the appellant claims to have had in the laboratory on that occasion.

In the first place, it appears that practically the only change which would have been brought about by the alleged new contract was as to the provision of the original contract which prohibited

the appellant from practicing in Marion county. All the other matters which are alleged to have been contained in the alleged new oral contract were practically the same as in the original contract. It is true the original contract contained no express provision in reference to appellant having his own patients, but it appears without dispute that the appellant always did have his own patients, and there is no evidence that appellee ever denied appellant's right to have his own patients. Apparently this was always understood between the parties although omitted from the written contract. The provision of the contract prohibiting appellant from practicing in Marion county was a very important if not the most important provision of the contract to both of the parties. It seems to us quite improbable that the appellant, who testified that he had had many arguments with the appellee on account of the appellee's interference with his patients, both before and after the date of the alleged new contract, should obtain from the appellee such an important modification of the original contract, based only on the meager statements contained in a heated and hurried conversation that took place while a patient was waiting in his chair, without having it reduced to writing or at least suggesting that it be reduced to writing either as a part of or as a substitute for the written contract. This new contract is alleged to have been made in March, 1926, and the appellant remained in the office with appellee until the trial of this case in May, 1933; and, although, according to appellant's testimony, he and appellee had disagreements subsequent to the making of the alleged new oral contract, the record is silent as to the appellant ever having referred to such new oral contract at any time prior to the commencement of this action.

Appellant stresses the fact that the new oral contract is testified to, not only by appellant, but by Theodosia Crossen, who, it is claimed, is a disinterested witness. It is, of course, well recognized that the preponderance of the evidence does not depend upon the number of witnesses. Aside from the fact that the statements testified to by appellant and Theodosia Crossen do not, in our opinion, make a preponderance of the evidence, as against the inherent improbabilities of the matters testified to by them and other facts and circumstances in evidence, we think there are good grounds for doubting the disinterestedness of this witness. For practically six years she was the office girl, kept the books, and made out the statements from which the division of the money taken in by the appel-

lant was to be made. The books Nos. 2 to 5, inclusive, cover a period that roughly coincides with the period of her employment, and are the books in which the major portion of the discrepancy was found, as shown by the report of the examiners. None of these discrepancies appears to have been discovered or mentioned by her, either during the six years of her employment or during the period from December, 1929, to December, 1932, when this action was instituted, during which time, although living six miles or more in the country, she visited Dr. Harlan's office two or three times a week. We think these circumstances are sufficient to raise at least a very strong suspicion that this witness was not altogether ignorant of the discrepancies which had resulted to the advantage of the appellant, and that it cannot be said that she was a disinterested witness.

No complaint has been made by the appellant on this appeal as to the amount of the discrepancies found by the trial court between the sums received by the appellant and the sums paid by him to the appellee, upon which the trial court based his judgment for $1,727.50. As already stated, the amount of the discrepancies found by the trial court was less than that shown by the report of the men who examined the books, and, in his opinion, the trial court expressly stated that any item concerning which there was any doubt was not considered by him in reaching his conclusion. The books containing the accounts cover the period from July, 1920, to the latter part of 1931, and contain hundreds of items. It is obviously impossible for this court to make a detailed examination of all the items contained in these books, and, as no complaint seems to have been made as to the amount of the judgment, it is unnecessary that we should attempt to do so.

No issue has been raised in the pleadings or presented in argument as to the invalidity of the provision of the contract under which the appellant was enjoined from practicing in Marion county, and this question has not been considered by us.

We find no reason for disturbing the judgment and decree of the trial court, and such judgment and decree is hereby affirmed.— Affirmed.

MITCHELL, C. J., and EVANS, ALBERT, and KINDIG, JJ., concur.