Clara MABRIER, Appellee,

v.

**A. M. SERVICING CORPORATION OF RAYTOWN, Appellant.**

**No. 52969.**

Supreme Court of Iowa.

Sept. 17, 1968.

Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellant.

Richard L. Pinegar, Des Moines, for appellee.

STUART, Justice.

Plaintiff slipped and fell in the Atlantic Thrift Store at Eastgate Shopping Center in Des Moines. Her action at law for damages for persnoal injuries resulted in a verdict of $23,954 in her favor. Defendant has appealed from the overruling of its motion for new trial which attacked (1) the sufficiency of the evidence on certain issues, (2) excessiveness of the verdict, and (3) the instructions.

I. Defendant's first error relied upon for reversal relates to the sufficiency of the evidence to generate a jury question on the causal connection between the fall and the claimed injury to plaintiff's knee.

On January 20, 1966 Clara Mabrier, while shopping as a business invitee with her daughter in defendant's store slipped and fell on slick, greasy floor sealer which had not hardened at the spot of the fall because of improper application. Defendant's negligence is not an issue on appeal. Plaintiff fell on her left elbow and her left knee, experienced a great deal of pain in her elbow at that time and was taken immediately to the office of Dr. Dickens by her daughter. Her elbow was fractured. Dr. Dickens applied a cast which remained on her arm for about three weeks. Mrs. Mabrier testified: "At the time of the fall my arm hurt so bad * * * that is all I could think of * * *."

Plaintiff convalesced at home during the approximate 3 week period her arm was in a cast and was referred on February 9, 1966 to Dr. Dubansky, an orthopedic surgeon, who placed her on a treatment and exercise program to overcome the loss of motion in the injured elbow. Dr. Dubansky last saw her for treatment of her elbow on April 22, 1966. Mrs. Mabrier, at the time of trial,

had essentially recoverd from her elbow injury although her left arm was weaker and her elbow more sensitive than before.

Two or three days after the fall, plaintiff noticed discolored black and blue bruises on her left knee. She testified the bruises and swelling went away in two or three weeks and she was not too concerned about it because her arm hurt so bad at that time.

"After the fall in January, 1966, I noticed that if I was on my feet quite awhile then I would have pain and difficulty in my left knee, then if I was off my feet it would be all right. I never had that prior to January 20, 1966. This condition occurred periodically when I was on my feet for some time after the fall."

Plaintiff contacted Dr. Anspach about her left knee July 16, 1966: "* * * I did not tell him about the fall in connection with my knee either. I simply told him about the problems I was having with the knee. At the time I saw Dr. Anspach on the 16th, I told him about the problem of having gotten up out of the chair two or three weeks before and having some problem with my knee, that was sometime in June, but that had happened before, but it was more severe that time. I had to be more careful now when I would get up." Dr. Dubansky's records show he was not told of her fall until January 12, 1967.

X-rays indicated the necessity for surgery which was performed by Dr. Dubansky. He removed the left kneecap which he found to be soft, rough, and irregular and washed out specks of floating cartilage found in the knee joint. Plaintiff was hospitalized from July 17, 1966 to July 25, 1966 and returned to the hospital for treatment of her knee on three subseqent occasions.

Dr. Dubansky testified: "* * * there could be a causal relationship between the fall in January of 1966 and the condition that I found at the time of surgery." Dr. Dubansky also quoted from his written report of January 13, 1967 on recross and redirect examination: "I cannot unequivocally say that the accident was the sole cause, because the changes at the time seen by me are changes which are responses to many causes. It is on the basis of history that I say a causal relation exists between the condition when I saw it and the injury."

Defendant stresses the fact that plaintiff did not tell her doctors about falling on her knee until about a year after the accident and six months after it began to give her serious trouble. The failure to mention her fall is understandable. More painful injuries occupied her mind at the time. Dr. Dubansky testified: "An injury to a knee or kneecap can upset a process of degeneration or chondromalacia, which eventually will culminate in symptoms to the patient over a period of time, so that I believe that as given in the [hypothetical] question, in an injury to the kneecap, approximately six to seven months later you could have pain in the knee as a result of the injury."

Defendant also calls our attention to the portions of Dr. Dubansky's testimony in which he stated it was possible the condition of plaintiff's knee was caused by the fall or other causes.

However, Dr. Dubansky refused to make a distinction between possible and probable stating they meant the same to him. "I would use possible and probable interchangeably, not knowing any difference between the two."

■ Medical testimony that it is possible a given injury was the cause of subsequent disability, or "could have" caused it, is insufficient, standing alone, to establish causal connection. Rose v. John Deere Ottumwa Works, 247 Iowa 900, 910, 76 N.W.2d 756, 761.

■ "However, when expert evidence of possible causal connection is coupled with other testimony, nonexpert in nature, that plaintiff was not afflicted with any such condition prior to the accident, then the

question is for the jury. Rose v. John Deere Ottumwa Works, 247 Iowa 900, 76 N.W.2d 756; Chenoweth v. Flynn, 251 Iowa 11, 99 N.W.2d 310; Bradshaw v. Iowa Methodist Hospital, supra [251 Iowa 375, 101 N.W.2d 167]; See also annotation, 135 A.L.R. 516, 532, et seq." Schneider v. Swaney Motor Car Co., 257 Iowa 1177, 1188, 136 N.W.2d 338, 345; Giere v. Aase Haugen Homes, Inc., 259 Iowa 1065, 1072, 146 N.W.2d 911, 915.

■ There is ample evidence plaintiff's injured knee and elbow functioned properly prior to January 20, 1966. The causal connection between the fall and the knee injury was correctly submitted to the jury.

II. Defendant claims the trial court erred in submitting plaintiff's claim for future pain and suffering to the jury. It claims the future consequences of an injury must be shown with reasonable certainty, citing Bostian v. Jewell, 254 Iowa 1289, 121 N.W.2d 141 and Daniels v. Bloomquist, 258 Iowa 301, 138 N.W.2d 868. It points out the record is barren of any medical testimony as to future pain.

■ In Iowa, when pain is suffered right up to the time of trial and there is evidence plaintiff has not fully recovered, future pain and suffering may be submitted to the jury without medical testimony. Kaltenheuser v. Sesker, 255 Iowa 110, 118, 121 N.W.2d 672, 677; Arenson v. Butterworth, 243 Iowa 880, 890–891, 54 N.W.2d 557, 563; Danner v. Cooper, 215 Iowa 1354, 1364, 246 N.W. 223, 227.

The jury can find from such evidence that it is reasonably certain plaintiff will suffer pain in the future.

■ Much of the evidence set out above is pertinent to the question of future pain and suffering. In addition plaintiff, her husband and her daughter all testified that at the time of trial Mrs. Mabrier had pain, had lost much of the endurance and capacity she had for work and enjoyment prior to the fall, and had trouble getting around.

In the opinion of Dr. Dubansky: "* * * [plaintiff] would have permanent physical impairment in her left lower extremity." Mrs. Mabrier does not have to use a four leg walker, cane, or crutches, but if she leaves the home to do much walking, she puts the walker in the car "just in case". She lives in a two story house but has been sleeping in the dining room downstairs because she has trouble with stairs. Plaintiff exercises her left knee daily. Plaintiff testified: "Before January 20, 1966, I was in good health and free of pain. Since that time I have not had any days that I have been free of pain."

In light of the foregoing evidence as related to the type of injury, a jury question was generated as to future pain and suffering.

III. Defendant contends the verdict is excessive and is the result of passion and prejudice.

■ "In considering the size of verdicts we have repeatedly referred to passion and prejudice, shock the conscience, failure to administer substantial justice, the rule of fair compensation, and lack of support in the evidence. (Citations) It seems fundamental the most important of these is support in the evidence. If the verdict has support in the evidence the others will hardly arise, if it lacks support they may all arise. The real question in most cases, and here, is the amount and sufficiency of evidence to support the award made. Certainly where the verdict is within a reasonable range as indicated by the evidence the courts should not interfere with what is primarily a jury question." Mazur v. Grantham, 255 Iowa 1292, 1303, 125 N.W.2d 807, 813–814.

■ It is not necessary to repeat the evidence set out above relating to other issues which tends to support the award made by the jury. There was proof of permanent disability and pain and suffering which adversely affected her disposition and changed her way of life. She can no

longer perform the normal household chores and errands. She is irritable and doesn't enjoy going out. At the time of trial her life expectancy was 15.44 years. The verdict is within the fair range of the testimony and the trial court did not abuse its discretion in refusing to grant a new trial on this ground.

IV. Defendant claims error in the giving of instruction #2 which states: "The terms 'preponderance of evidence' and 'greater weight of evidence', as used in these instructions, are terms of practically the same meaning, and when it is said that the burden rests upon either party to establish any particular fact or proposition by a preponderance or greater weight of evidence, it is meant that the evidence offered and introduced in support thereof to entitle said party to a verdict, should when fully and fairly considered produce the stronger impression upon the mind and be more convincing when weighed against the evidence introduced in opposition thereto. *Such preponderance is not always to be determined by the number of witnesses on the respective sides, although it may be thus determined all other things being equal."* Defendant's objection is directed toward the italicized portion of the instruction.

Although we are not satisfied with that portion of the instruction for reasons hereinafter expressed, we do not believe it was prejudicial to defendant in this instance. Defendant produced no witnesses and there was no substantial conflict in the evidence. The issue here was the sufficiency of the evidence to make a jury question. The jury was not called upon to consider conflicting testimony to determine the preponderance or greater weight of the evidence.

The instruction limited the consideration of the number of witnesses to the exceedingly rare situation, not existing here, in which all other things are equal. We do not believe the instruction could have been interpreted by the jury as allowing them to disregard all other matters in determining the weight of the evidence as defendant claims. Instruction #2 did not constitute reversible error.

Instruction #2 is a verbatim recitation of Iowa Uniform Jury Instruction No. 1.11 prepared by a committee of the Iowa State Bar Association. Some courts have used substantially the same instruction for a number of years. We believe it could be improved as a statement of the Iowa law. The instruction should limit any consideration of the number of witnesses to those testifying on a given factual issue. The use of the phrase "not always" is misleading. The jury might well interpret the phrase to imply that the preponderance of the evidence is so determined "most of the time".

In many instances the entire sentence could be omitted. However, if the trial court deems it advisable to refer to the number of witnesses as a cautionary matter, the instruction should embody the following principles.

"In determining the probative force and the value of evidence, courts weigh it rather than count the witnesses." Brown v. Blanchard, 240 Iowa 123, 140, 35 N.W.2d 858, 867.

The preponderance of the evidence is not necessarily determined by the number of witnesses testifying to a given proposition. It is, however, a matter which the jury may properly consider along with all other matters in determining the greater weight of the evidence on any fact situation. Strom v. Des Moines and Central Iowa Railway Co., 248 Iowa 1052, 1067, 82 N.W.2d 781, 789; Wiese v. Hoffman, 249 Iowa 416, 424, 86 N.W.2d 861, 866; Brown v. Blanchard, 240 Iowa 123, 140, 35 N.W.2d 858, 867; Garretson v. Harlan, 218 Iowa 1049, 1058, 256 N.W. 749, 754; Madden v. Saylor Coal Co., 133 Iowa 699, 706–708, 111 N.W. 57, 59–60; Lautenbach v. Meredith, 240 Iowa 166, 170, 35 N.W.2d 870, 872; Ipsen v. Ruess, 239 Iowa 1376, 1383, 35

N.W.2d 82, 88; Brown v. Martin, 186 Iowa 564, 572–573, 173 N.W. 25.

For the reasons stated the trial court is affirmed.

Affirmed.

All Justices concur.