559 F.2d 468
 Richard Henry HYSELL and Barbara Hysell, Appellees,
v.
IOWA PUBLIC SERVICE COMPANY, and the City of Sioux City,
Iowa, Appellants,
v.
Thurman SIMPSON, Appellant,
and
Irving F. Jensen Company.
 Nos. 76-1744, 76-1847 and 76-1863.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 15, 1977.
Decided July 12, 1977.
 
 Frank Jacobs (argued), and Dewie J. Gaul, Jacobs, Gaul, Nymann & Green, Sioux City, Iowa, on brief, for Iowa Public Service Co.
 Maurice B. Nieland (argued), and Robert E. Beebe and Kindig, Beebe, McCluhan, Rawlings & Nieland, Sioux City, Iowa, on brief, for Thurman Simpson.
 William E. Kunze (argued), Gleysteen, Harper, Kunze, Eidsmoe & Heidman, Sioux City, Iowa, and Sam W. Masten, Canton, S.D., on brief, for appellee, Richard Henry Hysell.
 Patrick C. McCormick, Sioux City, Iowa, made rebuttal and on brief, for City of Sioux City, Iowa.
 Before MATTHES, Senior Circuit Judge, and WEBSTER and HENLEY, Circuit Judges.
 WEBSTER, Circuit Judge.
 
 
 1
 In this second appeal from a diversity personal injury action, we review only the contention of appellants that the $1,500,000 in damages awarded to the plaintiff Richard Hysell was excessive.
 
 
 2
 Hysell, a construction worker on a road project in Sioux City, Iowa, sustained injuries on May 18, 1973, when he came in contact with a boom truck which was touching a high voltage power line. The case was tried to the court, which awarded Hysell $1,500,000 and Mrs. Hysell $200,000 in damages. Liability was assessed against Iowa Public Service Co. (IPS), which owned the power line, and the City of Sioux City, which frequently sent inspectors to the construction area and had paid certain costs of the road paving project on which Hysell was engaged when he was injured. The District Court found that the City was entitled to indemnity from IPS under the latter's franchise agreement; that IPS was not entitled to indemnity from Jensen Company, Hysell's employer; and that IPS was not entitled to indemnity or contribution from Thurman Simpson, operator of the boom truck.
 
 
 3
 On appeal by IPS, a panel of this Court affirmed the liability findings of the District Court,[1] with the exception of the finding that IPS was not entitled to contribution from Simpson; this finding was reversed. In addition, IPS had challenged in this Court the award of $1,500,000 to Richard Hysell, as without support in the evidence and erroneously excessive. The District Court's $1,500,000 award was unsupported by the specific findings of fact required by Fed.R.Civ.P. 52(a). Rather than entertain the claim of excessiveness, we vacated the judgment and remanded the case to the District Court "for further explication and itemization of the award of damages," Hysell v. Iowa Public Service Co., 534 F.2d 775 (8th Cir. 1976), and entry of a new judgment.
 
 
 4
 On remand, the District Court made additional findings of fact on the damages issue. It made specific awards of damages in fourteen categories; the total awarded is $1,500,000, the same amount the court awarded in its initial judgment. This new judgment was entered on July 30, 1976.
 
 
 5
 IPS again appeals, contending that the $1,500,000 award is excessive, and that interest should be awarded only from the date of entry of the second judgment. Thurman Simpson also appeals, challenging the excessiveness of the judgment. Finally, Sioux City, which did not appeal the first judgment, also seeks to challenge the second judgment as excessive. We affirm.
 
 I.
 Hysell's Injuries
 
 6
 It is undisputed that Richard Hysell has suffered extremely painful, permanently-disabling injuries. The findings of the District Court, which as to the facts of Hysell's injuries are substantially uncontested, can be summarized as follows:
 
 
 7
 As a result of the accident, Hysell suffered burns of both legs, resulting in amputation above the knees, and of the left arm, resulting in amputation above the elbow. He also suffered a deep burn to his right side, resulting in weakening of the abdominal wall; kidney damage of as yet undetermined extent; burns and scarring of his left shoulder resulting in seventy-five percent limitation of motion; and other burns and injuries. He has undergone at least nine surgical procedures. He has suffered, and continues to suffer, "phantom pain" in the amputated limbs. He has been totally disabled, and is unable without assistance to perform even simple daily tasks. Someone must be constantly in attendance to care for his needs.
 
 
 8
 Prostheses have been used in his treatment, with some limited success, but their usefulness is limited by the nature of his injuries. Hysell has suffered serious mental distress, including a reluctance to go out in public, because people stare at him in horror.
 
 
 9
 Hysell has suffered certain economic injuries which are undisputed: past medical expenses ($40,964.12), estimated future medical expenses ($20,150.00), future cost of prostheses ($45,500.00), auto devices ($1,800.00), past attendant care ($21,590.00), pretrial loss of earnings ($14,663.00), and necessary modifications to his home ($10,000.00). These amounts were included in the new judgment; neither the propriety of their inclusion nor the amounts awarded are challenged.
 
 
 10
 The District Court, in addition, awarded the following amounts, the propriety of which is in dispute: past and future pain and suffering ($300,000.00), disability to person ($132,700.00), future attendant care ($578,295.84), lost earning capacity ($233,622.04), past non-paid work services ($2,474.00), future non-paid work services ($51,034.00), and lost services ($47,207.00).
 
 II.
 Standard of Review
 
 11
 As we indicated in our opinion in the first appeal, "The amount of damages entered as the judgment in a non-jury case is within the ambit of the discretionary powers of the District Court, although the standard of review is ultimately that of the 'clearly erroneous' concept of Fed.R.Civ.P. 52(a)." Hysell v. Iowa Public Service Co., 534 F.2d 775, 786 (8th Cir. 1976) (footnote omitted); see Howard v. Green, 555 F.2d 178 (8th Cir. 1977). This Court has in the past intervened to reduce a verdict for excessiveness "only in those rare situations where we are pressed to conclude that there is 'plain injustice' or a 'monstrous' or 'shocking' result." Hysell v. Iowa Public Service Co., supra, 534 F.2d at 786 n.8, quoting Solomon Dehydrating Co. v. Guyton, 294 F.2d 439, 447-48 (8th Cir.), cert. denied, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961). See also Nodak Oil Co. v. Mobil Oil Corp., 533 F.2d 401, 410 (8th Cir. 1976); Slatton v. Martin K. Eby Construction Co., 506 F.2d 505, 508 (8th Cir. 1974), cert. denied, 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975); Snodgrass v. Nelson, 503 F.2d 94, 96 (8th Cir. 1974); Zatina v. Greyhound Lines, Inc., 442 F.2d 238, 242-43 (8th Cir. 1971).[2]
 
 
 12
 Because this is a diversity case, we must take care that the damage award does not exceed that which could be sustained were the case before the highest court of the state whose substantive law gives rise to the claim. Morrow v. Greyhound Lines, Inc., 541 F.2d 713, 721 (8th Cir. 1976); Bankers Life & Casualty Co. v. Kirtley, 307 F.2d 418, 423 (8th Cir. 1962); National Food Stores, Inc. v. Utley, 303 F.2d 284, 286-87 (8th Cir. 1962). In this action the governing law is that of the State of Iowa.[3]
 
 
 13
 In addition, apart from any claim of excessiveness, we are required to vacate any portion of a damage award that is intended to compensate for injury that is not compensable under the governing substantive law.
 
 III.
 
 14
 With these principles in mind, we examine appellants' challenges to the various amounts awarded Hysell.
 
 A. Pain and Suffering
 
 15
 Appellants claim that the $300,000 awarded to Hysell for past and future pain and suffering is excessive.
 
 
 16
 Under Iowa law, a tort victim may be compensated for the pain and suffering he incurs. His recovery may include compensation for future pain and suffering. See Ehlinger v. State of Iowa, 237 N.W.2d 784, 792 (Iowa 1976); Schnebly v. Baker, 217 N.W.2d 708, 726 (Iowa 1974); Mabrier v. A. M. Servicing Corp. of Raytown, 161 N.W.2d 180, 183 (Iowa 1968). It may also include damages for mental and emotional harm. See Leahy v. Morgan, 275 F.Supp. 424, 426 (N.D.Iowa 1967). Because there is "no market in pain and suffering"[4] any attempt to assign monetary value is necessarily inexact, and the trier of fact must be afforded wide discretion in determining what is fair compensation.
 
 
 17
 Hysell suffered the pain of severe burns over large parts of his body and the amputation of three limbs. He was subject to repeated hospitalization and nine surgical procedures. He suffers "phantom pain" in the missing limbs and further pain in the use of his prostheses. He has endured a period of severe depression and cannot leave his home without fear and anxiety. We cannot say that allowing $300,000 as compensation for this injury is such a "plain injustice" or "monstrous or shocking result" as to warrant reducing this portion of the verdict for excessiveness. Nor does the amount awarded exceed that which would likely be sustained by the Supreme Court of Iowa.[5]
 
 B. Disability to Person
 
 18
 In addition to pain and suffering, the District Court awarded Hysell $132,700.00 for the disability to his person, as compensation for the severe limitations placed on his mobility by his injuries. Appellants claim that this was an improper duplication of the award for pain and suffering.
 
 
 19
 Duplication of recovery by compensating a single injury under two different names is, of course, to be avoided. See DeWall v. Prentice, 224 N.W.2d 428, 434 (Iowa 1974) (to allow award for loss of earnings and loss of support as a parent is improper duplication of recovery); Adams v. Deur, 173 N.W.2d 100, 108 (Iowa 1969). Pain and suffering and disability are related; the two, however, are separate injuries. The former includes all the items discussed above: physical pain and suffering, and mental anguish resulting therefrom. Disability, however, is a distinct injury under Iowa law. In Schnebly v. Baker, supra, the trial court awarded $300,000 for pain and suffering and for disability. The Iowa Supreme Court indicated that these were, indeed, distinct items:
 
 
 20
 The award of $300,000 was not for the pain and suffering item alone, and Dr. Baker did not ask to have the findings enlarged to show the sum allowed for that item itself. * * * We cannot say that the evidence does not support an award of $300,000 for pain and suffering, and total disability, together.
 
 
 21
 217 N.W.2d at 726.
 
 
 22
 Thus, under Iowa law pain and suffering and disability are different items of injury; that is how they were treated by the District Court in this case. Moreover, the $132,700.00 award for disability made here is not excessive. Hysell's disability can accurately be described as total. There was abundant evidence that he cannot perform the simplest tasks of life, e. g., bathing, using the toilet, and removing his prostheses, without assistance. He can now walk only with great difficulty, on smooth, level surfaces, and only for short distances. We cannot say that an award of $132,700.00 as compensation for this disability is a "plain injustice" or a "monstrous or shocking result."
 
 C. Lost Earning Capacity
 
 23
 Iowa law recognizes lost earning capacity as a compensable item of damages. Ehlinger v. State of Iowa, supra, 237 N.W.2d at 792; Schnebly v. Baker, supra, 217 N.W.2d at 726; Anthes v. Anthes, 258 Iowa 260, 139 N.W.2d 201, 208 (1965); Carradus v. Lange, 203 N.W.2d 565, 568 (Iowa 1973). This is distinct from any recovery for pain and suffering or disability. See Schnebly v. Baker, supra, 217 N.W.2d at 726. While the loss is to be measured by the impairment of general wage earning capacity, rather than loss of wages for a specific occupation, see Grant v. Thomas, 254 Iowa 581, 118 N.W.2d 545, 548 (1962), the fact finder may consider evidence of the plaintiff's past earnings. Schnebly v. Baker, supra, 217 N.W.2d at 726.
 
 
 24
 There was evidence that Hysell would have earned approximately $6,400.00 in the 1973 construction season (from April 15 to November 15), and would have supplemented this income in the winter by working at a beef packing house. Dr. Charles Linke, an economist called by plaintiffs, testified that the present value of plaintiff's expected money wages during his 31.2 year post-trial work life expectancy was $265,111.00. The District Court awarded $233,622.04 for lost earning capacity.
 
 
 25
 Appellants claim this award is too large. They point out that the sum of $140,000.00, if it were invested at a nine percent return, would yield $9,800.00 per year, an amount in excess of Hysell's earnings at the time of the injury.[6] They claim that the portion of the award in excess of $140,000 is therefore excessive.
 
 
 26
 Appellants' argument ignores the effect of inflation, an effect which under Iowa law may be taken into account. In Schnebly v. Baker, supra, and Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632 (Iowa 1969), the plaintiff's expert witness, in computing loss of future earnings, was permitted to increase the future earnings by a projected rate of inflation, before discounting those earnings to present value. In Schnebly, the expert concluded that the probable future rate of inflation and the discount rate were "a standoff." 217 N.W.2d at 728.
 
 
 27
 Here, plaintiff's expert testified to an inflation rate of 5.25%, and used a discount rate of 6% in computing the present value of future earnings at $265,111.00. The District Court's conclusion that a present award of $233,622.04 was necessary to compensate plaintiff for his loss of after-tax future earnings was not clearly erroneous, in light of the Iowa policy of permitting allowance for future inflation.
 
 D. Future Attendant Care
 
 28
 A disabled plaintiff is entitled to compensation for the expense of future nursing care required by his injury. See Ehlinger v. State,supra, 237 N.W.2d at 791; Schnebly v. Baker, supra, 217 N.W.2d at 727. In making an award for future care, a court applying Iowa law may make an allowance for inflation similar to that used in compensating for lost earning capacity. See Schnebly v. Baker, supra, 217 N.W.2d at 727.
 
 
 29
 There was medical testimony that Hysell requires the constant care of an attendant (not necessarily a registered nurse). There was evidence that this attendant care could currently be obtained at a cost of $43.18 per day. Dr. Linke, plaintiffs' economist, testified that, assuming a 5.5% annual increase in cost, and using a 6% discount rate, the present value needed to provide attendant care over Hysell's expected life (40.3 years) was $578,275.00. No opposing testimony was presented by defendants. The District Court awarded $578,295.84 for future attendant care.
 
 
 30
 In light of the evidence going to the current cost of this care, Dr. Linke's testimony regarding the probable increase in cost, and the Iowa policy of allowing for inflation, we cannot say that this allowance was excessive.[7]E. Non-paid Work Services
 
 
 31
 The District Court awarded Hysell $2,474.00 for past "non-paid work services" and $51,034.00 for "future non-paid work services." These amounts represented the past and future cost to plaintiffs of services in the home which Hysell would have been able to perform but for his injuries.
 
 
 32
 We have found, and the parties have cited, no Iowa authority allowing an injured plaintiff to recover for his own "non-paid work services" as a separate item of damages. Rather, the impairment of a plaintiff's ability to perform unpaid services for himself has been an element of one of the items previously listed. See, e. g., Carradus v. Lange, 203 N.W.2d 565, 569 (Iowa 1973) (as element of services as wife and mother); Mabrier v. A. M. Servicing Corp. of Raytown, 161 N.W.2d 180, 183-84 (Iowa 1968) (inability to perform normal household functions an element of disability).
 
 
 33
 Had this case been submitted to a jury under instructions allowing both a general recovery for disability, and a separate recovery for loss of ability to perform normal household tasks, we would have some fear that a duplication of recovery had been permitted. See generally DeWall v. Prentice,224 N.W.2d 428, 434 (Iowa 1974) (duplication of recovery resulted from improper jury instruction). In this case, however, damages were assessed by the trial court. We assume, in the absence of any suggestion in the record to the contrary, that the court segregated this element from the award for general disability, so that no duplication occurred.
 
 
 34
 Nor is the amount awarded for Hysell's inability to perform these tasks excessive. There was testimony that prior to his injuries Hysell made substantial repairs around the home. He serviced his own car, landscaped the yard, did lawn work, and built a patio and steel shed. Dr. Linke, using studies he considered authoritative, estimated the average value of non-paid work services performed by a head of household in Sioux City, over Hysell's expected life, to be $2,474.00 in the pre-trial period and $51,034.00 in the post-trial period.
 
 
 35
 In light of this evidence, the trial court's award for non-paid work services was not excessive.
 
 F. Services as a Father
 
 36
 The final item of contention is the $47,207.00 allowed Hysell for the injury to his two minor children in "the loss and diminution of his services and companionship as a father." This is an item of recovery which was not recognized at common law. See W. Prosser, Handbook of the Law of Torts § 125, at 896 (4th ed. 1971). However, Iowa has by statute, Iowa Code Ann. § 613.15,[8] created a right to recovery for the value of the services of an injured person as parent. This right is enforceable by the parent rather than the child. Thus, the impairment of Hysell's services as a parent was a proper item for recovery in this suit.
 
 
 37
 In addition, the amount recovered for this injury, $47,207.00, was not excessive. There was evidence that prior to his injury Hysell spent a substantial amount of time caring for and playing with his two children, who were aged seven and six at the time of trial. He was a devoted father, having, in Mrs. Hysell's words, "a real good relationship" with the children. After the accident, he could no longer care for them, or play with them; his relationship with the children was strained.
 
 
 38
 The value of a father's services, like the value of pain and suffering, is difficult to measure. However, it cannot be said that valuing the permanent loss to these young children of the services of an attentive father at $47,207.00 was improper.
 
 
 39
 In summary, the amounts awarded by the District Court were not excessive or unjust, and had a proper basis in Iowa law.
 
 IV.
 Interest
 
 40
 There remains the issue of postjudgment interest. Title 28 U.S.C. § 1961 provides:
 
 
 41
 Interest shall be allowed on any money judgment in a civil case recovered in a district court. * * * Such interest shall be calculated from the date of the entry of the judgment, at the rate allowed by State law.
 
 
 42
 The "date of the entry of the judgment" for purposes of computing postjudgment interest in this suit is not May 9, 1975, the date of judgment after trial. The judgment entered on that date was expressly vacated on appeal as legally insufficient. See Hysell v. Iowa Public Service Co., supra, 534 F.2d at 788. Interest does not accrue on a vacated judgment. See Riha v. International Telephone and Telegraph Corp., 533 F.2d 1053 (8th Cir. 1976). Rather, the proper date for the computation of postjudgment interest is July 30, 1976, when the District Court entered judgment after remand.
 
 
 43
 Hysell questions, on this appeal, whether the judgment against the City of Sioux City was vacated by our mandate in the earlier appeal. Sioux City had not appealed from the District Court's first judgment. In our mandate, we indicated that the judgment of the District Court was "vacated," without limiting our order to any particular party or parties. It was our intention thereby to vacate the judgment against the City as well as the appealing parties. It was within our power and appropriate for us to do so.
 
 
 44
 When IPS filed its notice of appeal from the first judgment, this Court acquired jurisdiction to reverse or modify the entire judgment, even as it applied to non-appealing parties. Once a timely notice of appeal has been filed from a judgment, it gives us jurisdiction to review the entire judgment; rules requiring separate appeals by other parties are rules of practice, which may be waived in the interest of justice where circumstances so require. See Langnes v. Green, 282 U.S. 531, 538, 51 S.Ct. 243, 75 L.Ed. 520 (1931); Grunin v. International House of Pancakes, 513 F.2d 114, 126 n.12 (8th Cir. 1975); Arnold's Hofbrau, Inc. v. George Hyman Const. Co., 156 U.S.App.D.C. 253, 480 F.2d 1145 (1973); In re Barnett, 124 F.2d 1005 (2d Cir. 1942); Maryland Casualty Co. v. City of South Norfolk, 54 F.2d 1032, 1039 (4th Cir. 1932); 9 J. Moore, Federal Practice P 204.11(5) (2d ed. 1975).
 
 
 45
 This was an appropriate case for waiver of the usual rule of practice requiring a separate appeal. The Fourth Circuit, in a case similar to this one, Arnold's Hofbrau, Inc. v. George Hyman Const. Co., supra, chose to waive the usual rule requiring a separate appeal, and to grant relief to non-appealing parties. In that case, defendant Hyman successfully challenged on appeal the District Court's award of damages to the plaintiff, and obtained a new trial. Defendants Beuchert and Cass failed to appeal. The Fourth Circuit said:
 
 
 46
 It would be unconscionable for plaintiff to be entitled to claim a greater or lesser recovery for the same damage from Hyman than from Beuchert and Cass. Plaintiff has fully litigated the correctness of the amount of its recovery in Hyman's appeal so that plaintiff has been neither helped nor hurt by the failure of Beuchert and Cass to appeal; nor do we perceive that Hyman has not asserted any argument available to Beuchert and Cass had they appealed. Being satisfied that we must require the amount of plaintiff's recovery from Hyman to be reassessed, we are persuaded that the only just result is to require the same reassessment of the amount of plaintiff's recovery from Beuchert and Cass.
 
 
 47
 480 F.2d at 1150.
 
 
 48
 In the case at bar, it appeared at the time of the first appeal that the judgment in Hysell's favor might be excessive. To allow the judgment against the City to stand would be to risk assessing varying liabilities against two parties to the same wrong. Accordingly, we chose to vacate the judgment against the City. Postjudgment interest against the City, also, must be computed from the date of the new judgment.
 
 V.
 Conclusion
 
 49
 Having reviewed the record with the benefit of the supplemental findings required by our order of remand, we conclude that the findings of the District Court are not clearly erroneous. While the award might not be in an amount which we would have selected had we been the triers of fact, we cannot say, with the supplemental findings now before us, that the result is either shocking or a plain injustice. The judgment is therefore affirmed, with interest to be allowed at the rate provided by law from July 30, 1976.
 
 
 
 [1]
 The Honorable Edward J. McManus, United States District Court for the Northern District of Iowa
 
 
 [2]
 While certain of these cases are directed to the standard of review for excessiveness of a jury verdict, they "are nonetheless applicable in a non-jury context." Hysell v. Iowa Public Service Co., 534 F.2d 775, 786 n.8 (8th Cir. 1976)
 
 
 [3]
 See Hysell v. Iowa Public Service Co., supra, 534 F.2d at 779
 
 
 [4]
 See D. Dobbs, Handbook of the Law of Remedies § 8.1, at 545 (1973)
 
 
 [5]
 See Ehlinger v. State, supra, 237 N.W.2d at 791 (sustaining $638,000 total jury award for paralyzed plaintiff); Schnebly v. Baker, supra, 217 N.W.2d at 726 (sustaining $300,000 award for pain and suffering and disability to disabled infant plaintiff, and total award to him of $912,124
 
 
 [6]
 Appellants make similar arguments with respect to other challenged items, and with respect to the size of the judgment as a whole. They apply an assumed rate of interest to the amounts awarded, and point out that the result of the judgment will be a substantial income to Hysell
 With respect to those items of the award intended to compensate Hysell for future expenses, it was permissible under Iowa law for the District Court to find, from the evidence, that the effect of this income would be substantially offset by future inflation. See text at 10-11. With respect to those items which represent compensation for intangible injuries (i. e., pain and suffering and disability), this kind of argument is simply irrelevant. These awards were intended to compensate Hysell for a drastic one-time loss. That they may be used to generate substantial income does not affect their propriety; they are, as indicated, not shockingly disproportionate to the injuries suffered.
 
 
 [7]
 Appellants point out that much of this care is now being provided to Hysell, at no cost to him, by his wife. This has no effect on Hysell's recovery. See Legler v. Muscatine Clinic, 207 Iowa 720, 223 N.W. 405, 407 (1929) (approving instruction allowing recovery for nursing care provided by plaintiff's wife)
 
 
 [8]
 Iowa Code Ann. § 613.15 provides that, in an action for damages because of wrongful death or injury to a man or a woman, "such person, or the appropriate administrator, may recover the value of services and support as spouse or parent or both, as the case may be, in such sum as the jury deems proper; provided, however, recovery for these elements of damage may not be had by the spouse and children, as such, of any person who, or whose administrator, is entitled to recover same."