Kirk **BERTNESS**, Plaintiff
and Appellant,

v.

Craig A. **HANSON**, Defendant
and Appellee.

No. 12821.

Supreme Court of South Dakota.

Argued March 17, 1980.

Decided May 14, 1980.

Rehearing Denied June 6, 1980.

T. R. Pardy of Mumford, Protsch, Sage & Pardy, Howard, for plaintiff and appellant.

J. B. Lammers of Lammers, Lammers, Kleibacker & Casey, Madison, for defendant and appellee.

DUNN, Justice.

Plaintiff Kirk Bertness appeals from a judgment entered in the Circuit Court of the Fourth Judicial Circuit denying recovery for personal injuries allegedly suffered in an automobile accident. We reverse.

On the evening of February 22, 1975, at approximately 9 p. m., Bertness was a passenger in a vehicle driven by Leonard L. Van Pelt. The vehicle was being driven in an easterly direction on South Dakota Highway 34, approximately one mile west of the city limits of Madison, Lake County, South Dakota. At the same time, defendant Craig A. Hanson was driving a 1967 Pontiac Lemans automobile on Highway 34 in an easterly direction. The Hanson vehicle collided into the rear end of the vehicle in which Bertness was a passenger. At the time of the accident, Bertness was occupying the backseat.

Bertness first sought medical attention on February 25, 1975, when he complained of a stiff and sore neck and was treated by Dr. Homer Stensrud, a medical doctor in Madison, South Dakota. At that time, Dr. Stensrud thought that Bertness had a muscle spasm problem and referred him to the physical therapist at the Madison Clinic. This treatment was carried out in February and March of 1975. Dr. Stensrud saw Bertness again on March 26, 1975, when Bertness complained of having pain in his midback area. X rays were taken at that time, and they revealed an abnormality between the eighth and ninth dorsal vertebrae and a very slight disc narrowing. Bertness continued receiving therapy through April, May, June, July and August of 1975.

Bertness continued to complain of pain in his neck and back, and he was referred to Dr. Dennis Johnson, an orthopedic specialist at the Van Demark Clinic in Sioux Falls, South Dakota. He was seen by Dr. Johnson on October 5, 1976, at which time Dr. Johnson examined X rays taken on August 19, 1976, by Dr. Bastian, a doctor of chiropractic in Madison, South Dakota. Dr. Johnson also took an X ray, which revealed the problem at the ninth vertebra, as well as wedging and narrowing as had been noted by Dr. Stensrud. Dr. Johnson further noted some ligamentous injury at that time. Another X ray was taken on December 14, 1976, and it, too, revealed increased narrowing of the disc space between the eighth and ninth thoracic vertebrae. On March 15, 1978, another X ray was taken, and Dr. Johnson made a disability evaluation determining that Bertness had a limitation of lateral flexion of the neck to the right thirty degrees and to the left thirty-three degrees (the normal flexion of the neck is forty-five degrees), together with tenderness in the neck and pain and tenderness over the area of the wedged ninth vertebra. Dr. Johnson determined that Bertness had a permanent partial disability of fifteen percent of the whole man.

Testimony offered at trial established that Bertness was involved in a number of mishaps subsequent to the accident in question. Specifically, Bertness testified that:

**318**

(1) he was involved in a minor automobile accident while traveling five m. p. h. sometime in 1975 after the accident in question; he sustained no injury, (2) he was involved in a similar minor accident in the winter of 1976; he sustained no injury, (3) he was involved in two automobile accidents in April 1977 wherein the automobiles in which he was riding rolled over; he sustained no injuries; (4) an automobile he was driving struck a deer sometime in 1977; he sustained no injury, and (5) on an unknown date he tipped over on a stationary motorcycle and sustained a scratched wrist.

The trial court found as a matter of law that Hanson was negligent and that his negligence was the proximate cause of the accident. The court instructed the jury that there was no evidence of any contributory negligence on the part of Bertness in regard to the proximate cause of the accident.

By affidavit and motion in limine, Bertness sought to eliminate any testimony regarding the above-mentioned subsequent accidents from the jury's consideration, but this motion was denied. He made a motion to strike all evidence relating to these accidents from the record when he moved for a directed verdict, but these motions were also denied. His objections to various instructions that allowed the jury to consider whether the subsequent accidents aggravated his injuries were overruled. Finally, his motions for judgment n.o.v. and for a new trial were also denied. This appeal followed.

 We find that the trial court erred in admitting evidence of accidents that occurred subsequent to the accident in question. Hanson asserted as an affirmative defense that Bertness had failed to use reasonable care to avoid aggravating his injury subsequent to the accident in question. There was no evidence upon which reasonable minds could have concluded that Hanson had met his burden of proving such lack of reasonable care by a preponderance of the evidence.

The deposition of Dr. Stensrud, which was read into evidence, established that the X rays taken on March 26, 1975 (slightly over a month after the accident), revealed the injury that forms the basis of this lawsuit. No evidence whatsoever was elicited to the effect that Bertness had been involved in any type of accident between the initial accident of February 22, 1975, and the March 26th X rays. It is true that Dr. Stensrud did not immediately notice any injury on the X rays, but his re-examination of the same X rays after subsequent visits by Bertness to Drs. Bastian and Johnson convinced him that the irregularity between the eighth and ninth vertebrae was indeed present.

Both Dr. Johnson and Dr. Bastian testified that there was a deterioration of the injury. Dr. Stensrud testified that the greater amount of deterioration occurred between the time of his X rays (March 26, 1975) and the X rays taken by Dr. Bastian (August 1976). In other words, the X rays taken by Dr. Bastian revealed that the injury had worsened since the X rays of March 26, 1975. Dr. Johnson, who had the benefit of the X rays taken by Drs. Stensrud and Bastian, testified that he took X rays on four occasions: October 5, 1976, December 14, 1976, May 1977, and March 15, 1978. Dr. Johnson testified that this series of X rays showed that no worsening of the injury took place after October 5, 1976, and that the injury actually improved somewhat from that date. Both Dr. Johnson and Dr. Stensrud testified that the injury revealed on their X rays and the X rays of Dr. Bastian was the same injury.

It is crucial to note that the only accident that occurred from the time the first X rays were taken (March 26, 1975) until the time the X rays were taken by Dr. Johnson (October 5, 1976) was the accident in which Bertness' automobile, while traveling 5 m. p. h., struck a parked automobile. The total extent of damage in that accident was that the parked car had its taillight knocked out. Bertness testified that he received no injury in this accident, which was literally a "fender bender," and no evidence to the contrary was elicited. The remainder of the subsequent accidents occurred after October 5,

1976, and Dr. Johnson testified that the injury had not worsened, but rather, the condition had actually improved after October 5, 1976.

The only evidence Hanson could elicit from Dr. Johnson and Dr. Stensrud was that Bertness had never informed them of these subsequent accidents and that it was normal for patients to offer such information. Neither of the doctors testified that knowledge of these accidents would change his opinion as to the causation of the injury. Both doctors maintained that based upon reasonable medical certainty, the accident of February 22, 1975, in which Hanson was the negligent driver, was the cause of Bertness' injury. Each doctor agreed that the roll-over accidents, the striking of the deer, and the motorcycle tipover were accidents that could possibly give rise to a similar injury in a given situation. They were medically certain to a reasonable degree, however, based upon the above-mentioned X rays, that the original accident was the cause of the injury. Furthermore, it is important to note that neither doctor ever testified that there was even a remote possibility that the "fender bender" accident, which is the only accident that occurred during the period when Bertness' injury deteriorated somewhat, could have caused or aggravated his injury.

▆▆▆ It becomes evident that the trial court should have directed a verdict in favor of Bertness regarding the issue of proximate cause. The court had found as a matter of law that Hanson was negligent, that his negligence caused the accident, and that Bertness was free of contributory negligence. We have explained that the only subsequent accident of any relevance was the "fender bender" in the winter of 1975. In regard to this minor accident, neither doctor testified that it could even remotely be the cause of this type of injury in this situation or any situation. Bertness testified that he suffered no injury from this minor accident, and absolutely no evidence to the contrary was presented. It was error to admit the subsequent accidents into evidence because they lacked any probative value and were prejudicial. SDCL 19–12–3 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Here, the evidence of accidents after October 5, 1976, was not probative whatsoever, but it was prejudicial in that it misled the jury into believing that these accidents were to be considered on the question of proximate cause.

▆▆▆ Hanson had the burden of proving that any of these subsequent accidents caused or aggravated Bertness' injury. *Kowing v. Williams*, 75 S.D. 454, 67 N.W.2d 780 (1954). He failed to offer any proof to that effect. Where an expert states that a certain action may possibly cause a certain injury in a given situation without stating that the causal connection exists in the case at issue, such evidence does not raise an issue for the trier of fact. *Mabrier v. A. M. Servicing Corporation of Raytown*, 161 N.W.2d 180 (Iowa 1968). Reasonable minds viewing this evidence in a light most favorable to Hanson could come to but one conclusion: Hanson's negligence caused Bertness' injury.

Defendant finally contends that the evidence of subsequent accidents was admissible to counter the testimony of plaintiff's experts on damages. Plaintiff's expert economist equivocated at trial when asked if such accidents could have a bearing in calculating loss of income, etc., to be suffered in the future by a reasonable, average human being with plaintiff's background and education. Upon remand, with the jury foreclosed from conjecture on the issue of proximate cause, the trial court may conclude that accidents of this type and frequency would alter the calculation of damages based upon the "average human being" concept and thus be admissible into evidence. Likewise, the evidence that Bertness played hockey and went skiing may be allowed on the damages question if found to be probative.

The judgment is reversed and the cause is remanded with directions to enter a directed verdict in favor of Bertness on the causation issue. Further proceedings as to damages are in order.

MORGAN and HENDERSON, JJ., concur.

WOLLMAN, C. J., and FOSHEIM, J., dissent.

WOLLMAN, Chief Justice (dissenting).

I would affirm the judgment entered on the jury verdict in favor of defendant.

The majority opinion rests upon the premise that the jury was required to accept as true the testimony given by plaintiff and his witnesses. Defendant's denial that plaintiff was injured as a result of the February 22, 1975, accident placed upon plaintiff the burden of proving that issue by a preponderance of the evidence. The jurors were correctly instructed that they were the sole judges of all questions of fact, of the credibility of the witnesses, and of the weight to be given to the testimony of the witnesses. Further, they were correctly instructed that in weighing the evidence they were entitled to consider the common knowledge they possessed, together with their ordinary experiences and observations in their daily affairs of life. Finally, the jurors were instructed that they were not bound by the opinions expressed by the expert witnesses and that they were free to disregard such opinions entirely if they should conclude that the opinions were not sound or were outweighed by other evidence. These are hardly exceptionable propositions of law, and in the light of all of the evidence we should not be surprised that the jury should have applied them in such a way as to conclude that plaintiff had failed to prove by a preponderance of the evidence that the injury he complained of was caused by the February 22, 1975, accident. That an appellate court should not follow these precepts is surprising, however, given the great deference that this court has recently expressed towards jury verdicts. See, e. g., *Fjerstad v. Sioux Valley Hospital*, 291 N.W.2d 786 (S.D.1980); *Lewis v. Storms*, 290 N.W.2d 494 (S.D.1980); *Mid-America Marketing Corp. v. Dakota Industries, Inc.*, 289 N.W.2d 797 (S.D.1980). Had the jury returned a verdict in favor of plaintiff, much of the analysis of the medical testimony set forth in the majority opinion would be relevant to a discussion of the sufficiency of the evidence to support the verdict. In view of the verdict actually returned, however, I am at a loss to understand why on review this testimony should be accorded a credence that the jury implicitly found it did not have.

FOSHEIM, Justice (dissenting).

Counsel for appellant conceded in oral argument that the evidence of subsequent accidents was relevant. See also: Wright and Graham, 22 Federal Practice and Procedure § 5170 (1978). This means it was admissible (SDCL 19–12–2) unless its probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence (SDCL 19–12–3). The trial court admitted the evidence. In view of appellant's motion in limine we can concede this ruling was error. However, in order to disturb that ruling, appellant has the burden of showing not only error, but prejudicial error. To do that, he must establish affirmatively from the record that, under the evidence, the jury might and probably would have returned a different verdict if the alleged error had not occurred. *Alberts v. Mutual Service Casualty Insurance Co.*, 80 S.D. 303, 123 N.W.2d 96 (1963); *Dwyer v. Christensen*, 77 S.D. 381, 92 N.W.2d 199 (1958).

If the evidence was relevant, as appellant concedes, but proved no independent cause or aggravation of appellant's injury, as the majority concludes, then it is difficult to see how appellant has affirmatively established prejudicial error, especially since the court properly instructed the jury that to warrant recovery they must find that the defendant's negligence was the proximate cause of plaintiff's injury.

Plaintiff was a passenger in the vehicle when injured. The accident was not caused by any negligence on his part. Accordingly, evidence of his subsequent accidents could hardly prejudice reasonable minds as to damages unless we are to assume that it caused the jury to conclude that he was so accident-prone as to be the subject of some sort of hex, and that consequently nobody, including the defendant, should be liable for any injury he might sustain. Such a conclusion would not be cognizant of jurors' rightful measure of intelligence and common sense.

I would affirm.